UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION No. 05-11579EFH

| | |
|---|---|
| MAURICE LARIVIERE, | ) |
| | ) |
| Plaintiff | ) |
| v. | ) |
| | ) |
| JOSEPH SOLOMON, individually, and as | ) |
|    Chief of Police of the City of Methuen, and | ) |
| JOSEPH ALAIMO, individually, and as | ) |
|    Deputy of Police of the City of Methuen, and | ) |
| THE CITY OF METHUEN | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL**

Now comes the Plaintiff Maurice Lariviere in the above-entitled action and hereby opposes the Defendants' Motion to Compel Discovery. As reasons in support, the defendants state that the materials subject to the Motion were served on Defendants on June 3, 2007, and therefore the Motion is moot. (Copies of the responses that were served are attached hereto as Exhibits A and B.)

WHEREFORE, the defendants respectfully request that Brooks' Motion be DENIED.

1

                                                Plaintiff,
                                                MAURICE LARIVIERE
                                                By his attorneys,

                                                        /s/
                                                _____
                                                Carmine W. DiAdamo
                                                BBO#122960
                                                William H. DiAdamo
                                                 BBO#558883
                                                DiAdamo Law Office LLP
                                                40 Appleton Way
                                                Lawrence, MA 01840
Dated: June 12, 2007                    (978) 685-4271


## CERTIFICATE OF SERVICE

    I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by email on June 12, 2007.

                                                /s/
                                                _____
                                                William H. DiAdamo

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION No. 05-11579EFH

| | |
|---|---|
| MAURICE LARIVIERE, | ) |
| | ) |
| Plaintiff | ) |
| v. | ) |
| | ) |
| JOSEPH SOLOMON, individually, and as | ) |
| Chief of Police of the City of Methuen, and | ) |
| JOSEPH ALAIMO, individually, and as | ) |
| Deputy of Police of the City of Methuen, and | ) |
| THE CITY OF METHUEN | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF'S ANSWERS TO THE DEFENDANTS' SECOND SET OF INTERROGATORIES

Objections to Defendant's Instructions

The plaintiff objects to the instructions of defendants as outlined in the second set of interrogatories to the extent that the same exceed the discovery rights of the defendants as provided for in the FRCP and the Local Rules. The plaintiff declines to provide those answers exceeding the rules.

INTERROGATORY NO. 1:

Please state in detail, all facts upon which you rely to support the allegation in Count X of your complaint, that the defendants unlawfully restrained you.

ANSWER

The plaintiff in responding to this Interrogatory adopts those statements he verified in the Second Amended Complaint, his Answers to Interrogatories, and his testimony at his deposition. Plaintiff further relies on the facts elicited in the discovery conducted by the parties.

INTERROGATORY NO. 2:

Please describe, in complaint detail, with reference to words, gestures, and/or physical contact, the "force" and "threats" described in paragraph 182 of your complaint that you allege were used by the defendants to unlawfully restrain you.

1

ANSWER

The plaintiff in responding to this Interrogatory adopts those statements he verified in the Second Amended Complaint, his Answers to Interrogatories, and his testimony at his deposition. Plaintiff further relies on the facts elicited in the discovery conducted by the parties.

By way of further answering, plaintiff states that I was prohibited from standing, from leaving the chair I was in and exiting the room. The defendants stood over me and gestured with their hands in a threatening manner and they blocked my ability to exit the room. It was clear that physical force would be used if I attempted to leave the area.

INTERROGATORY NO. 3:

Please describe, in complete detail, the following:

A. When, with reference to minutes and hours, the alleged unlawful restraint of you by the defendants began and ended;
B. The exact location of the alleged unlawful restraint of you by the defendants;
C. the identity of any witnesses to the alleged unlawful restraint of you by the defendants;
D. the identity of any persons with knowledge of the unlawful restraint of you by the defendants;

ANSWERS A - D:

The plaintiff in responding to this Interrogatory adopts those statements he verified in the Second Amended Complaint, his Answers to Interrogatories his testimony at his deposition. Plaintiff further relies on the facts elicited in the discovery conducted by the parties. Plaintiff further answers as follows:

    A. In responding to this interrogatory the plaintiff states that he did not examine his watch to determine the exact timelines. However to the best of his memory, plaintiff believes he entered the second floor conference room with the defendants Solomon and Alaimo at or around 10:30 a.m. on February 16, 2005. The next 10 to 15 minutes were taped and related to the claimed criminal investigation. At or around 10:40 to 10:45 a.m. the tapes were turned off and the coercion of the defendants demanding plaintiff's resignation began. This period commenced the unlawful restraint because plaintiff was not allowed to leave notwithstanding the absence of any legitimate purpose for holding me in custody. The end of the unlawful restraint occurred immediately after plaintiff signed the resignation that to the best of my knowledge would be approximately at noon or 12:15 p.m. on that day.

    B. The unlawful restraint occurred in the second floor conference room, while I was being taken back to the solicitor's office and finally led outdoors in custody to my motor vehicle.

    C. The only percipient witnesses to the actual restraint are the plaintiff and the defendants.

D. The plaintiff in responding to this answer adopts those statements he verified in the Second Amended Complaint, his Answers to Interrogatories, and his testimony at his deposition. Plaintiff further relies on the facts elicited in the discovery conducted by the parties.

INTERROGATORY NO. 4:

Please describe, in complete detail, the efforts you made to contact your wife, counsel or anyone else as alleged in paragraph 182 of your complaint.

ANSWER

The plaintiff in responding to this Interrogatory adopts those statements he verified in the Second Amended Complaint, his Answers to Interrogatories his testimony at his deposition. Plaintiff further relies on the facts elicited in the discovery conducted by the parties.

By way of further answering, plaintiff states that he asked to leave the premises to see his wife and discuss this matter but was denied by the defendants the right to leave or otherwise contact her. Plaintiff also asked talk to Fulya Metin but was also denied that right by the defendants.

INTERROGATORY NO. 5:

Please describe, in complete detail, the "injuries" described in paragraph 183 of your complaint that you sustained as a result of the "unlawful restraint of freedom".

ANSWER

The plaintiff in responding to this Interrogatory adopts those statements he verified in the Second Amended Complaint, his Answers to Interrogatories, and his testimony at his deposition. Plaintiff further relies on the facts elicited in the discovery conducted by the parties.

By way of further answering, the emotional distress plaintiff has suffered from this incident is incalculable. This has further resulted in physical pain including headaches. He is nearly incapable of thinking of anything else. Plaintiff has lost his job of 25 years, and has been unable to find work. Not only did this cost him his salary, but also the significant benefits he had built over the years, including serious diminishment of his retirement. Many friendships have been damaged or irretrievably lost, and his reputation has been permanently tarnished, if not destroyed. The financial and emotional toll has been incredibly hard on his family and his relationship with his wife of 31 years, as well as his 3 children, all of whom are in college.

Finally, one thing his father (a Methuen police officer and then Assessor) said keeps coming back to him. He told plaintiff that, "Larivieres may not pass on a lot of money, but they do pass on their good name. I left you one, and I expect you to leave it for your children." He feels like he has failed. It is literally a nightmare for him, and one from which he cannot awake.

INTERROGATORY NO. 6:

Please describe, in complete detail, the specific "misrepresentations" that were made to you by the defendants that support Count IX of your complaint.

ANSWER

The plaintiff in responding to this Interrogatory adopts those statements he verified in the Second Amended Complaint, his Answers to Interrogatories and his testimony at his deposition. Plaintiff further relies on the facts elicited in the discovery conducted by the parties.

By way of further answering, plaintiff states that the defendants falsely misrepresented that Metin wanted plaintiff to resign or she would seek criminal charges against plaintiff. The plaintiff refers more specifically to the depositions of Metin and Wnek. Solomon and Alaimo also falsely told plaintiff they were not proceeding with charges and would keep the matter confidential; in fact they released this information to the press and discussed it publicly numerous times. They also turned the file over to the District Attorney in direct contradiction to what they promised.

INTERROGATORY NO. 7:

Please describe, in complete detail, every action, step, effort or method used by you or your agents, servants or representatives to mitigate your resignation and/or secure your reinstatement to the position of City Solicitor after February 16, 2005.

ANSWER

The plaintiff in responding to this Interrogatory adopts those statements he verified in the Second Amended Complaint, his Answers to Interrogatories his testimony at his deposition. Plaintiff further relies on the facts elicited in the discovery conducted by the parties.

By way of further answering, plaintiff contacted the former chairman and current Mayor William Manzi III directly and through other parties sought a hearing and thereafter reinstatement. More specifically, the plaintiff and Manzi talked numerous times. Manzi stated that he would, "make things right" and that he had put McQuillan in as interim solicitor and would reinstate me, "when things calmed down but he needed time." He stated numerous times to Plaintiff that plaintiff coming forward early would result in nothing occurring especially since Solomon and Pollard had sent this case to the DA to block his return. Plaintiff was unaware at this time that Solomon and Alaimo had falsely told plaintiff that Fulya wanted to press criminal charges and was unaware that she in fact had told Wnek this.

Manzi also promised that he would make sure the council did not act to accept plaintiff's resignation and in fact proudly told plaintiff that he diverted the council's attention from such action at the meeting where McQuillan was made interim solicitor McQuillan also called plaintiff several times during the early period and told plaintiff he was there only until plaintiff could return.

4

Plaintiff relied on their statements with the belief that Manzi was the leader of the political system. It was clear that nothing would happen on a positive note unless Manzi directly approved it, and Manzi stated he needed time to address the politics of bringing plaintiff back. Manzi also said that did not want to have his chances of becoming Mayor hurt in this controversy and that he needed time to bring things back to normal. He specifically asked plaintiff to be patient while he let the controversy play itself out.

Plaintiff also met with Michael Hennessey, chairman of the Methuen City Council, early the week following the incident, to discuss the incident and to discuss seeking reinstatement. They also talked about indemnification for any potential lawsuit against plaintiff. He indicated that he would speak to the other councilors.

Shortly after plaintiff resigned he began asking Manzi for a Methuen Home Rule Charter 2-11 council investigation, and Manzi told him to wait until things calmed down a bit more. In early to mid June 2005, Plaintiff had Emma Donnelly asked Manzi for the 2-11 investigation through Dorothy Kalil, and she also contacted Councilor Kenneth Willette. Manzi's response then was to deny that plaintiff asked him for a 2-11 investigation and to say the only way he would recommend a 2-11 was if plaintiff indemnified Methuen. This was the same time period when Peter McQuillan got the permanent appointment.

Finally, counsel also advised the city via the then interim Solicitor Peter McQuillan of the fact that I was seeking reinstatement and warned against a permanent appointment to the solicitor's position in the written notices of April 27, 2005 and June 16, 2005. When these all failed plaintiff sought judicial relief.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY
THIS 6TH DAY OF JUNE, 2007.

Maurice J. Lariviere, Jr.

Plaintiff,
MAURICE LARIVIERE
By his attorneys,

Carmine W. DiAdamo
BBO#122960
William H. DiAdamo
BBO#558883
DiAdamo Law Office LLP
40 Appleton Way
Lawrence, MA 01840
Dated: June 6, 2007        (978) 685-4271

5

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by email and first class mail, on June 6, 2007.

_____
William H. DiAdamo

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION No. 05-11579EFH

| | |
|---|---|
| MAURICE LARIVIERE,<br><br>                       Plaintiff<br>v.<br><br>JOSEPH SOLOMON, individually, and as<br>   Chief of Police of the City of Methuen, and<br>JOSEPH ALAIMO, individually, and as<br>   Deputy of Police of the City of Methuen, and<br>THE CITY OF METHUEN<br><br>                       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF'S RESPONSE TO THE DEFENDANTS' SECOND REQUEST FOR PRODUCTION OF DOCUMENTS

The Plaintiff Maurice LaRiviere responds to the discovery request of the defendant's for the request for production of documents ("sensitive material") only to the extent as provided for in the F.R.C.P. Discovery Rules and the USDC-MAD Local Rules and objects to any interpretation of the conditions of the request for production beyond such boundaries of discovery.

It is specifically stated by the plaintiff that compliance with the discovery request is conditioned on the terms and conditions outlined herein.

<u>In the instance where the defendant's shall refuse to accept the terms of these conditions they shall forthwith return the "sensitive material" without having examined nor copied said answers or documents;</u>

By acceptance and use of these answers and documents in the litigation the defendant's agree to the following terms and conditions:

    1.    Some of the information produced by the plaintiff to this litigation contains very sensitive personal information the improper distribution of which would constitute an inappropriate violation of his and his families' privacy.

    2.    The materials shall not be used by any person excepting for the sole purpose of and related to this litigation.

1

    The material shall be disclosed to no one except:
- (i) Counsel for the parties and the staff of such counsel who are directly involved in this litigation;
- (ii) Any other person agreed to in writing by the plaintiff;
- (iii) Outside experts and consultants retained by the defendant's in this litigation;
- (iv) The party defendants to this litigation.

3. The providing of these answers and materials is intended solely to facilitate compliance with discovery in this action, and neither such designation nor treatment in conformity with such designation shall be construed in any way as an admission or agreement by the plaintiff that the materials or answers may be admitted into evidence or used in the litigation.

4. Outside consultants or experts ("experts") and their staff whose advice and consultation is being or will be used by a party for the preparation or trial of this case may, as outlined above, have access to documents and information only to the extent necessary to provide their advice or render their opinion. Prior to the disclosure of any "sensitive material", however, each such expert and the staff members who will have access to the answers and material shall read this agreement and by their use thereof be considered to have agreed to fully abide by its terms.

5. Each person given access to the "sensitive material"" shall segregate such material, keep it secure, and keep such information and documents confidential.

6. Notwithstanding the other provisions of this agreement, any document may be disclosed and shown to any person, who, as shown on the face of the document, was an author or recipient of the document.

7. Nothing in this Agreement shall be construed to limit in any way the right of the plaintiff to use the "sensitive material" for any purpose.

8. At the conclusion of this litigation, by judgment or otherwise, "sensitive material" shall be returned to the plaintiff or destroyed by shredding. Destruction by shredding shall be certified in writing to the plaintiff. However, the following types of documents may be kept within the internal files of trial counsel for a party: documents prepared by attorneys or outside experts and consultants including summaries, abstracts or quotations of or from "sensitive material"; pleadings attaching copies of "sensitive material"; and deposition and trial exhibits which are or contain "sensitive material".

9. Whenever any "sensitive material" is to be discussed or disclosed in a deposition the plaintiff may exclude from the deposition room any person who is not entitled to access of such material under this Agreement.

10. If "sensitive material" in possession of a party to this action is subpoenaed by any court, administrative agency, legislative body, or any other person not a party to this action, the party to whom the subpoena is directed shall (i) immediately notify in writing counsel for the plaintiff and (ii) assert this agreement as a defense of such demand. The responsibility for attempting to prevent the disclosure or production of such information shall rest exclusively with the person who designated the information as "sensitive material".

11. This agreement shall not preclude or limit the right of any party to oppose discovery on any ground which would otherwise be available.

12. Failure to designate discovery material as "sensitive material" prior to disclosure shall not be deemed a waiver in whole or in part of a party's claim of confidentiality, either as to the specific information disclosed or as to any other information relating thereto or on the same or related subject matter. Designation of "sensitive material" hereunder may be made at any time, to be effective upon and after such designation. The parties shall attempt in good faith to retrieve and protect such late-designated "sensitive material".

13. The inadvertent disclosure of any statement or document which is subject to a legitimate claim that the statement or document should have been withheld from disclosure as a privileged attorney-client communication, or as attorney work product, or by reason of some other discovery limitation authorized or permitted by the Federal Court Rules of Civil Procedure, shall not waive the privilege for that statement or document if the plaintiff requests its return and states that the use in the litigation shall be precluded. Any such privileged or work product document inadvertently disclosed shall be returned to the producing party upon written request, together with all copies of any such documents.

14. If "sensitive material" is disclosed through inadvertence or otherwise to any person not authorized under this Agreement, the party causing such disclosure shall inform the person receiving the information that the "sensitive material" is protected by this agreement, make its best efforts to retrieve the "sensitive material", and promptly inform the person producing the "sensitive material" of the disclosure.

15. This Agreement shall be binding on the parties receiving and or reviewing this material.

16. Nothing herein shall prevent any party from applying to the Court for a modification of this Agreement should the moving party believe the agreement, as originally made, is in violation of the discovery rules hampering its efforts to

17. Anytime after the conclusion of this litigation (including any appeal from any judgment), and subject to further agreement of this Court, the designating party may remove from this Court any "sensitive material" located in the record or pleadings of this case.

18. This Agreement shall survive the final termination of this case regarding any retained documents or contents thereof.

By receiving and or reviewing the "sensitive material" I have stipulated that I have read and understand the terms of the foregoing Agreement and except as provided herein, I will not use or disclose to anyone any of the contents of any ""sensitive material"" received and I agree to be bound by the terms and conditions of this Agreement.

I understand that I am to retain all copies of any of the materials that I receive which have been designated as "sensitive material" in a container, cabinet, drawer, room, or other safe place in a manner consistent with the Agreement, and that all copies are to remain in my custody until I have completed my assigned or legal duties, whereupon the copies are to be returned or destroyed as specified in the Agreement. I acknowledge that return of such materials shall not relieve me from any of the continuing obligations imposed upon me by the Agreement.

## Objections to Defendant's Instructions

The plaintiff objects to the instructions of defendants as outlined in the Second Request for Production of Documents to the extent that the same exceed the discovery rights of the defendants as provided for in the FRCP and the Local Rules. The plaintiff refuses to provide those instruments exceeding the rules.

## General Statement Regarding Document Requests

The plaintiff further asserts that the documents sought in the RFPD have in part previously been provided to the defendant's, are in possession of the defendant's or have been admitted into evidence during the course of the discovery in this action and/or in the MCAD proceedings and therefore the plaintiff need not provide those materials at this time.

REQUEST NO. 1

Copies of any and all documents which pertain in any way to the factual assertions advanced in the complaint, including but not limited to; the alleged deceit and misrepresentations made by the defendants as set forth in Count IX of the complaint.

RESPONSE

See documents produced.

REQUEST NO. 2

Copies of any and al documents which pertain in any way to the factual assertions advanced in the complaint, including but not limited to: the alleged false imprisonment of the plaintiff by the defendant's as set forth in Count X of the Complaint.

RESPONSE

See documents produced.

REQUEST NO. 3

Copies of any and all documents referred to in or referenced by the plaintiff's answer to the defendant's Second Set of Interrogatories.

RESPONSE

See documents produced.

REQUEST NO. 4

Copies of the plaintiff's cell phone bills for any personal or work cellular phone for the time period of August 2004 through August 2005.

RESPONSE

See documents produced.

REQUEST NO. 5

Copies of any employment applications, cover letters and any other documents submitted for any positions of employment for which the plaintiff has interviewed since February 16, 2005.

RESPONSE

See documents produced.

REQUEST NO. 6

Copies of any and all documents demonstrating every action, step, effort or method used by you or your agents, servants or representatives to mitigate your resignation and/or secure reinstatement to the position of City Solicitor after February 16, 2005.

RESPONSE

See documents produced.

REQUEST NO. 7

Copies of any and all documents associated with the plaintiff's treatment with Brian McCarthy.

RESPONSE

See documents produced.

                                          Plaintiff,
                                          MAURICE LARIVIERE
                                          By his attorneys,

                                          Carmine W. DiAdamo
                                          BBO#122960
                                          William H. DiAdamo
                                          BBO#558883
                                          DiAdamo Law Office LLP
                                          40 Appleton Way
                                          Lawrence, MA 01840
Dated: June 6, 2007                (978) 685-4271

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by email and first class mail, on June 6, 2007.

                                          William H. DiAdamo