UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO: 05-11579EFH

|  |  |
|---|---|
| MAURICE LARIVIERE, | ) |
| Plaintiff, | ) |
| v. | ) |
|  | ) |
| JOSEPH SOLOMON, Individually, and as Chief | ) |
| of Police of the city of Methuen, JOSEPH | ) |
| ALAIMO, Individually and as Deputy Chief of | ) |
| Police of the City of Methuen, and THE CITY OF | ) |
| METHUEN, | ) |
| Defendants | ) |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

The defendants, Joseph Solomon, Joseph Alaimo and City of Methuen (hereinafter collectively referenced as "defendants"), hereby move this Honorable Court for an Order dismissing the plaintiff's Second Amended Verified Complaint with prejudice pursuant to Federal Rule of Civil Procedure 56. In support of this Motion, the defendants state the following:

## I.    PROCEDURAL BACKGROUND

This is an action in which the plaintiff, Maurice Lariviere, alleges that the defendants, Joseph Solomon, Joseph Alaimo and Methuen, violated his civil rights by forcing him to resign from his position as City Solicitor for the City of Methuen. The plaintiff filed his original Verified Complaint in the Massachusetts Superior Court, Essex County, on or about July 1, 2005.[1] On or about August 17, 2005, the matter was removed to the United States District Court for the District of Massachusetts. A Motion to

---

[1] A copy of the original Verified Complaint is attached to the Defendants' Motion for Summary Judgment as Exhibit "A".

Dismiss the plaintiff's original Verified Complaint was filed on August 18, 2005.[2]  On October 11, 2005, the Court issued an Order allowing the Motion, in part, and dismissing various counts of the Verified Complaint as to the particular defendants.[3]  With respect to the counts that are presently asserted by the plaintiff, the Court dismissed the count for Intentional Interference with Contractual Relations against both defendants and the count for Conspiracy against Methuen.  Nevertheless, the plaintiff reasserted these counts in the First Amended Verified Complaint.

The plaintiff filed a Motion for Leave to file a Second Amended Verified Complaint on January 12, 2007.  The Motion was allowed on January 25, 2007 and the Second Amended Complaint was filed containing the following counts:

| | |
|---|---|
| Count I: | Constructive Discharge/Unlawful Termination against Methuen, Solomon and Alaimo; |
| Count II: | Intentional Infliction of Emotional Distress against Solomon and Alaimo; |
| Count III: | Violation of Massachusetts Civil Rights Act against Solomon and Alaimo; |
| Count IV: | Violation of 42 U.S.C. §1983 against Solomon and Alaimo; |
| Count V: | Violation of 42 U.S.C. §1983 against Solomon and Alaimo in their Official Capacity; |
| Count VI: | Violation of 42 U.S.C. §1983 against Methuen; |
| Count VII: | Intentional Interference With Contractual Relations against Methuen, Solomon and Alaimo; |
| Count VIII: | Conspiracy against Methuen, Solomon and Alaimo; |
| Count IX: | Deceit against Solomon and Alaimo; and |

---

[2] A copy of the Defendants' Memorandum of Law in Support of Motion for Summary Judgment is attached to the Defendants' Motion for Summary Judgment as Exhibit "B".
[3] A copy of the Court's October 11, 2005 Order is attached to the Defendants' Motion for Summary Judgment as Exhibit "C".

Count X:       False Imprisonment against Solomon and Alaimo.[4]

## II.       RELEVANT ALLEGATIONS AND FACTS

The relevant facts and allegations are set forth in the defendants' Local Rule 56.1
Statement of Relevant Facts in Support of Defendants' Motion for Summary Judgment.

## III.       ARGUMENT

### A.       Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the affidavits, if any, show that
there is no genuine issue as to any material fact and that the moving party is entitled to a
judgment as a matter of law."  Fed. R. Civ. P. 56(c); Seaboard Surety Co. v. Town of
Greenfield, 370 F.3d 215, 218 (1st Cir. 2004).  A factual issue is "genuine" where "the
evidence on the point is such that a reasonable jury, drawing favorable inferences, could
resolve the fact in the manner urged by the nonmoving party."  Blackie v. State of Maine,
75 F.3d 716, 721 (1st Cir. 1996).  A factual issue is "material" where it "has the potential
to alter the outcome of the suit under the governing law."  Id.

The burden initially rests with the party seeking summary judgment to
demonstrate that "no genuine issue of material fact exists."  National Amusements, Inc. v.
Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995).  The party opposing summary
judgment "may not rest upon the mere allegations or denials of the . . . party's pleading."
Fed. R. Civ. P. 56(e).  The plaintiff cannot rely on "mere allegations or evidence that is
less than significantly probative."  Maldonado-Denis v. Costillo-Rodriguez, 23 F.3d 576,
581 (1st Cir. 1994); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S.

---

[4] A copy of the Second Amended Verified Complaint is attached to the Defendants' Motion for Summary Judgment as Exhibit "D".

574 (1986). A summary judgment opponent must do more than show that there is some metaphysical doubt as to the material facts. Instead, the opponent must present definite, competent evidence in order to survive the motion. <u>Maldanado-Denis</u> at 581.

The nonmovant, "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); <u>Triangle Trading Co. v. Robroy Ind., Inc.</u>, 200 F.3d 1, 2 (1st Cir. 1999). Factual disputes are resolved in a "light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." <u>Barbour v. Dynamics Research Corp.</u>, 63 F.3d 32, 36 (1st Cir. 1995).

**B.    The Court Should Dismiss Counts Against All Defendants for Intentional Interference with Contractual Relations (Count VII) and Against Methuen Conspiracy (Count VIII) Pursuant to the October 11, 2005 Order Dismissing These Counts**

In the October 11, 2005 Order addressing the defendants' Motion to Dismiss the original Verified Complaint, the Court dismissed the Count for Intentional Interference with Contractual Relations as to all three (3) defendants and the Count for Conspiracy against Methuen. Nevertheless, the plaintiff reasserted these counts in the First Amended Verified Complaint and the Second Amended Verified Complaint.

The Court should again dismiss these Counts with prejudice for the same reasons asserted in the defendants' Motion to Dismiss, pursuant to the doctrine of collateral estoppel and pursuant to the doctrine of the Law of the Case.[5]

**C.    Count I for Constructive Discharge/Unlawful Termination Should Be Dismissed**

---

[5] See Exhibit "B". All arguments asserted in the Memorandum of Law in Support of the Motion to Dismiss are incorporated herein by reference. See <u>Peterson v. Hopson</u>, 306 Mass. 597, 599, 29 N.E.2d 140 (1940) ("Where there has been no change of circumstances, a court or judge is not bound to reconsider a case, an issue, or a question of fact or law, once decided").

As an initial matter, the claim against the defendants, Solomon and Alaimo, should be dismissed pursuant to G.L. c. 258, § 2. Massachusetts has created a statutory scheme, through the Massachusetts Tort Claim Act, M.G.L. c. 258, for torts allegedly committed by public officers and entities. Under the Act, "no . . . public employee shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting in the scope of his office or employment." M.G.L. c. 258, §2.

A constructive discharge claim should be dismissed against a public employees, such as Solomon and Alaimo, pursuant to M.G.L. c. 258 § 2, "if the employee was acting within the scope of the employment and the employee was under the direction and control of the public employer." Canney v. City of Chelsea, 925 F.Supp. 58, 69 (D.Mass. 1996); see also Fantini v. Salem State College, 2007 WL 922883, 6 (D.Mass. 2007); Stevens v. City of Brockton, 676 F. Supp. 26 (D. Mass. 1987) (dismissing wrongful termination claim against police chief). Here, the plaintiff alleges that defendants, Solomon and Alaimo, constructively discharged him in the course of their employment with the Methuen Police Department. Therefore, Count I against defendants, Solomon and Alaimo, should be dismissed to the extent that the allegation is made against them in their official capacity.[6]

As to defendant, Methuen, the theory behind a constructive discharge claim is that although a person is not terminated, conditions are made so difficult that a reasonable person would feel compelled to resign. A constructive discharge is the functional equivalent of a firing. See GTE Products Corp. v. Stewart, 421 Mass. 22, 34 (1995). The

---

[6] As the Second Amended Verified Complaint makes clear in Paragraph 125, this claim is not advanced against defendants, Solomon and Alaimo, in their individual capacities. See Exhibit "D" at ¶ 125.

elements of a constructive discharge claim must be based on an objective assessment of working conditions.  The test is whether or not a reasonable person standing in the shoes of the plaintiff would find the working conditions so "difficult or unpleasant" as to compel resignation.  Id. citing  Alicea Rosado v. Garcia Santiago, 562 F.2d 114, 119 (1st Cir. 1977).  For constructive discharge, a plaintiff must show: 1) that an employer deliberately acted to create an intolerable work environment; and 2) the actions were intended to force the employee to quit.  Sims v. City of New London, 738 F. Supp. 638, 647 (D.Conn. 1990).

In GTE Products Corp. v. Stewart, the Supreme Judicial Court explained that:

> A single, isolated act of an employer (or an agent of the employer) usually will not be enough to support a constructive discharge claim.  Thus, evidence of a single unfavorable performance review or even of a demotion generally will not be deemed sufficient to support a claim. In order to amount to a constructive discharge, adverse working conditions must be unusually aggravated or amount to a continuous pattern before the situation will be deemed intolerable.  421 Mass. at 34-35.

As to the defendant, Methuen, Count I should be dismissed because the plaintiff's resignation, as plead in the Second Amended Verified Complaint and described in discovery, was caused by one single event.  When asked to describe the intolerable conditions created by the defendant, Methuen, the plaintiff testified at his deposition:

Q:    What facts do you have that there was a deliberate intent to create an intolerable work environment for you?

A:    Pollard regularly calling me and yelling at me, threatening me.  Manzi coming down to the office and telling me that she is berating the hell out of me to everybody and that she wants me out.  Her denying me the most basic things such as membership in lawyer associations as far as being picked up by the town, which it had been for twenty

> years. Her refusing to hire people that I asked be hired, her refusing to allow me to buy or fix equipment such as my photocopy machine, fax, any office materials. It goes on and on.
>
> Q:    Did any of the things that you just stated play a role in your decision to sign that resignation letter on the 16th of February?
>
> A:    No. Regrettably, it didn't.[7]

Therefore, according to the plaintiff, the proximate cause of the alleged forced resignation was not the acrimonious relationship between Mr. Lariviere and Methuen's Mayor, Sharon Pollard. Instead, according to Mr. Lariviere, it was the alleged conduct of Methuen's Police Department on the day in question, February 16, 2005, *i.e.* a single, isolated event.

Moreover, the only reasonable interpretation of the facts produced during discovery is that Mr. Lariviere's resignation was voluntary. "Absent a showing of fraud, coercion, or duress, any public employee may terminate his or her employment by tendering a resignation." Jones v. Wayland, 374 Mass. 249, 259 (1978) *citing* Cambell v. Boston, 337 Mass. 676 (1958). "A complete resignation, as was the instant one, after acceptance, operates to sever the officer from the office." Warner v. Selectman of Amherst, 326 Mass. 435, 439 (1950). Mr. Lariviere acknowledged that he signed the resignation and waived the right to a hearing before the City Counsel.[8] Mr. Lariviere, a licensed attorney with vast experience in municipal law, was a twenty-five (25) year "dedicated" employee awarded for his stellar performance against whom sexual

---

[7] See Deposition Transcript from Deposition of Plaintiff, Maurice Lariviere, Vol. II at page 34, attached to the Defendants' Motion for Summary Judgment as Exhibit "J
[8] See Deposition Transcript from Deposition of Plaintiff, Maurice Lariviere, Vol. I at pages 195 -196, attached to the Defendants' Motion for Summary Judgment as Exhibit "F".

harassment allegations never had been made.[9]   Moreover, Mr. Lariviere supposedly denied the allegations made by Ms. Metin and believed he had done nothing wrong.[10]   He knew he could have requested an attorney to be present and was read his Miranda rights.[11]   The only plausible explanation for Mr. Lariviere's resignation was not duress or coercion, but was his own acknowledgement that the allegations had validity, in his words he had "not had an arms length relationship" with Ms. Metin, that he and his family would face public embarrassment and that the City Council would preside over a termination hearing after a protracted sexual harassment investigation.[12]   Mr. Lariviere's resignation was unquestionably voluntary.   Therefore, the his claim of constructive discharge/unlawful termination has no legal basis.

For these reasons, Count I should be dismissed against defendant, Methuen, and the defendants, Solomon and Alaimo.

### D.     Count III, Alleging a Violation of Massachusetts Civil Rights Act, Should Be Dismissed

The plaintiff alleges that his civil rights were violated by defendants, Solomon and Alaimo, only.[13]   To establish a claim under the Massachusetts Civil Rights Act, M.G.L. c. 12, § 11I, the plaintiffs must prove that "(1) [their] exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) has been interfered with, or attempted to be interfered with, and (3)

---

[9] See Deposition Transcript from Deposition of Plaintiff, Maurice Lariviere, Vol. I at page 193, attached to the Defendants' Motion for Summary Judgment as Exhibit "F".
[10] Id. at pages 192 – 195.
[11] Id. at page 205
[12] Id. at page 175 and pages 58-65.
[13] To the extent that this claim is made against defendants, Solomon and Alaimo, in their official capacities, the claim is barred.  See Howcroft v. City of Peabody, 51 Mass.App.Ct. 573, 592-94 (2001) (a municipality is not a "person" for purposes of the MCRA; concluding further that a claim against an individual defendant in his official capacity as a municipal employee also is barred as the official capacity is an extension of the municipality).

that the interference or attempted interference was by 'threats, intimidation or coercion.' " Bally v. Northeastern Univ., 403 Mass. 713 (1989) (*quoting* M.G.L. c. 12, 11H).

A "threat" "involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm." Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467 (1994) (citations omitted), cert. denied, 513 U.S. 868 (1994). 'Intimidation' involves putting in fear for the purpose of compelling or deterring conduct." Id. (Citations omitted.) "Coercion," involves "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." Id. (quoting Websters' New International Dictionary at 519 (2d. ed. 1959) (citation omitted)).

The plaintiff's civil rights claims are not based upon a claim of excessive force. Instead, they are based upon an alleged deprivation the plaintiff's property interest in continuing his employment as Methuen's City Solicitor. The plaintiff alleges that he was deprived of "his constitutional due process rights to a clearly established protected property interest, namely his employment as city solicitor, a job he had held for over 25 years."[14] The plaintiff alleges that the defendants, Solomon and Alaimo, denied him of his constitutionally protected property right by:

> an unwarranted resignation and waiver of a hearing, by maliciously intimidating plaintiff, or by abusing lawful process by unlawful purpose, or by violating Lariviere's constitutional rights, or by falsely arresting in imprisoning the plaintiff, by conspiring against the plaintiff, or by interfering with plaintiff's civil rights by threats, coercion or intimidation.[15]

---

[14] See Exhibit "D" at ¶ 138.
[15] Id. at ¶ 141.

In order for Mr. Lariviere to have a constitutionally-protected interest in continued employment, he must have a "property" right in it.  "To have a property interest in a benefit, a person . . . must . . . have a legitimate claim of entitlement to it." Costello v. School Committee of Chelsea, 27 Mass.App.Ct. 822, 827 (1989).  "Property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ."  Cleveland Bd. Of Education v. Loudermill, 470 U.S. 532, 538 (1985) (internal quotations omitted).  In the instant case, Mr. Lariviere alleges that his due process rights existed "under the Methuen Home Rule Charter Article 9."[16]

Indeed, if Mr. Lariviere was a still an active City Solicitor, under Section 9 of the Methuen Home Rule Charter, he was entitled to notice of the charges, a right to request a good cause hearing and a good cause hearing before the Methuen City Council.[17] However, because Mr. Lariviere was not an "appointed officer or full-time salaried employee," he was not entitled to any hearing before the City Council.[18]  Moreover, Mr. Lariviere knowingly waived his right to due process pursuant to the Methuen Home Rule Charter when he signed the resignation letter.  At his deposition, he testified as follows:

> Q:     You knew going into the room that you were entitled to an administrative hearing on the civil side of the investigation, right?
>
> A:     If you're asking me as I walked to the door if somebody stopped me and asked me that question, I would say yeah.[19]

---

[16] Id. at ¶ 138.
[17] See City of Methuen Home Rule Charter, a copy of which is attached to the Defendants' Motion for Summary Judgment as Exhibit "L".
[18] Id.
[19] See Exhibit "F" at page 206.

Without ever requesting a hearing pursuant to Section 9 and without ever seeking a reinstatement hearing after his supposed involuntary resignation, Mr. Lariviere waived his property right to his position as City Solicitor. Tellingly, after the resignation, he never timely asked for reinstatement, revocation of the resignation, reappointment or even a hearing before the City Council to review the resignation.

Mr. Lariviere's claim that he signed the agreement under duress does not revive his purported property interest. In order to void the resignation letter because of duress, Mr. Lariviere must show "that conduct by the other party caused him to enter into the contract 'under the influence of such fear as precludes him from exercising free will and judgment.'" Coveney v. President & Trustees of the College of the Holy Cross, 388 Mass. 16, 22 (1983), quoting from Avallone v. Elizabeth Arden Sales Corp., 344 Mass. 556, 561 (1962). Cappy's, Inc. v. Dorgan, 313 Mass. 170, 174 (1943). Duress constitutes "a wrongful or unlawful act or threat . . . which deprives the victim of his unfettered will," resulting in the threatened party being "compelled to make a disproportionate exchange of values." International Underwater Contractors, Inc. v. New England Tel. & Tel. Co., 8 Mass. App. Ct. 340, 342 (1979), quoting from 13 Williston, Contracts § 1617, at 704 (3d ed. 1970). Not only must there be a wrongful or improper act or threat, but the act or threat must overcome the party's desire and undermine the agreement. See Fleming v. Dane, 298 Mass. 216, 218 (1937). Moreover, absent compelling circumstances, the availability of a reasonable alternative, such as a legal or administrative remedy, will defeat a claim of duress. Restatement (Second) of Contracts § 175 comment b (1979). See Willett v. Herrick, 258 Mass. 585, 603, cert. denied, 275

U.S. 545 (1927); International Underwater Contractors, Inc. v. New England Tel. & Tel. Co., 8 Mass. App. Ct. at 346.

Here, as set forth above, Mr. Lariviere was a licensed attorney with vast experience in municipal law and was a twenty-five (25) year "dedicated" employee awarded for his stellar performance against whom sexual harassment allegations never had been made.[20] He supposedly denied the allegations made by Ms. Metin and believed he had done nothing wrong.[21] He knew he could have requested an attorney to be present and was read his Miranda rights.[22] He also knew that he had violated Methuen's sexual harassment policy, a policy he had written, and knew that he would face an administrative proceeding before the City Council following an investigation into his conduct.[23] He also knew that only the City Council, not Methuen Mayor Sharon Pollard, had the authority to terminate him for a violation of the sexual harassment policy.[24] Mr. Lariviere's resignation was not the product of duress or coercion, but was his own acknowledgement that the allegations had validity, in his words he had "not had an arms length relationship" with Ms. Metin, and that he and his family would face public embarrassment.[25]

Moreover, Mr. Lariviere, a practicing attorney for over twenty-five (25) years in February 2005 who had an intricate knowledge of the Methuen Home Rule Charter, knew at the time he signed the resignation letter that he had a host of legal and administrative remedies available to him; namely, he could have 1) proceeded to a good cause hearing

---

[20] See Exhibit "F" at page 193.
[21] Id. at pages 192 – 195.
[22] Id. at page 205
[23] Id. at pages 55 and 57.
[24] Id. at page 58-65.
[25] Id. at page 175.

before the Methuen City Council;[26] 2) requested administrative leave;[27] or 3) requested an attorney and ceased the interview at any time.[28]  He failed to invoke a reasonable alternative, such as a legal and administrative remedies.  Therefore, his claim of duress should be defeated.  See Willett v. Herrick, supra; see also International Underwater Contractors, Inc. v. New England Tel. & Tel. Co., supra.

For all of the above reasons, Mr. Lariviere's Massachusetts civil rights claim is deficient as a matter of law and should be dismissed with prejudice.

**E.    Counts IV, V and VI Alleging a Violation of 42 U.S.C. §1983 Should Be Dismissed**

Title 42 U.S.C. § 1983 (hereinafter "§1983") was enacted in order to provide redress for violations of federally protected rights committed by individuals acting under color of law.  Monroe v. Pape, 365 U.S. 167 (1961).  According to the United States Supreme Court, § 1983 "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere."  City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985).  In order to succeed on a § 1983 claim, the plaintiff must establish that (1) the conduct complained of was committed by a person acting under color of state law, and (2) the conduct deprived him of a constitutional right.  Lockridge v. Board of Trustees, 294 F.3d 1010, 1017-18 (8th Cir. 2002).

In order to prevail on a claim based on denial of procedural due process pursuant to §1983, Mr. Lariviere must show that the defendants, acting under color of law, deprived him of the property interest of continued employment without "the minimum

---

[26] See Exhibit "F" at page 206.
[27] Id. at page 206.
[28] Id. at page 205.

13

amount of process that was due under the Constitution." See Wojcik v. Massachusetts State Lottery Comm'n, 300 F.3d 92, 102 (1st Cir. 2002).

As set forth above, if Mr. Lariviere was a still an active City Solicitor, under Section 9 of the Methuen Home Rule Charter, he was entitled to notice of the charges, a right to request a good cause hearing and a good cause hearing before the Methuen City Council.[29]  However, because Mr. Lariviere knowingly waived his right to a hearing, in explicit fashion, he was not entitled to any hearing before the City Council.[30]  Moreover, Mr. Lariviere knowingly waived his right to due process pursuant to the Methuen Home Rule Charter when he signed the resignation letter.  Without ever requesting a hearing pursuant to Section 9 and without ever seeking a reinstatement hearing after his supposed involuntary resignation, Mr. Lariviere waived his procedural rights and his alleged property right to his position as City Solicitor.

Moreover, Mr. Lariviere cannot succeed on his procedural due process claim because he had an adequate post-deprivation remedy.  Cronin v. Town of Amesbury, 81 F.3d 257, 260 (1st Cir. 1996).  As the Court of Appeals for the First Circuit has explained,

> If a state provides adequate post-deprivation remedies – either by statute or through the common law tort remedies available in its courts – no claim of a violation of procedural due process can be brought under Section 1983 against the officials whose random and unauthorized conduct caused the deprivation.

Lowe v. Scott, 959 F.2d 323, 340-41 (1st Cir. 1992).

In this case, Mr. Lariviere had an adequate post-deprivation remedy in the form of petitioning the Methuen City Council for reinstatement, asking for his resignation to be

---

[29] See Exhibit "L".
[30] Id. and see a copy of February 16, 2005 resignation letter is attached to the Defendants' Motion for Summary Judgment as Exhibit "G".

rescinded or asking for a the hearing before the Methuen City Council to review his resignation.  Mr. Lariviere did none of these things.[31]  Therefore, his due process claim cannot stand.

For all of the above reasons, Mr. Lariviere's §1983 claim is deficient as a matter of law and should be dismissed with prejudice.

### F.    Defendants, Solomon and Alaimo, Are Entitled to Qualified Immunity

Even if the plaintiff has alleged a viable civil rights claims, the defendants, Solomon and Alaimo, are entitled to qualified immunity.  Qualified immunity "shields law enforcement officials who reasonably but mistakenly believe that they are acting in accordance with constitutional mandates."  Medeiros v. Dracut, 21 F. Supp. 2d 82, 85 (D. Mass. 1998); see Duarte v. Healy, 405 Mass. 43, 47 (1989) (qualified immunity principles as developed under Federal law also shield public officials from liability under Massachusetts Civil Rights Act).  In evaluating a claim of qualified immunity the court must first decide whether, "taken in the light most favorable to the party asserting the injury . . . the facts alleged show the officer's conduct violated a constitutional right." Gutierrez v. Mass. Bay Transp. Auth., 437 Mass. 396, 404 (2002).  If so, the Court will then determine whether the right was clearly established so that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id.

In the instant matter, Mr. Lariviere admitted during his deposition that defendants, Solomon and Alaimo, were acting within constitutional mandates when he was questioned, detained and allegedly threatened with arrest.[32]  Mr. Lariviere testified that he

---

[31] See Exhibit "J" at page 24.
[32] See Exhibit "F" at pages 203-204.

was given his Miranda rights and never requested the right to consult an attorney during the time spent in the conference room.[33]  He testified:

> Q.   If Chief Solomon and Deputy Chief Alaimo had probable cause to believe that an indecent assault and battery had occurred on the morning of the 16th in Fulya Metin's office and your office, do you agree that they had a right to ask you questions?
>
> A:   If there was a criminal allegation being lodged, yes.
>
> Q:   Do you agree that they had a right to detain you?
>
> A:   If it was purely related to the criminal, yes.
>
> Q:   If Chief Solomon and Deputy Chief Alaimo had probable cause to believe that an indecent assault and battery had occurred on the morning of February 16th, do you agree that they had a right to arrest you?
>
> A:   Yes.[34]

It is undisputed, therefore, that the defendants, Solomon and Alaimo, were not violating any constitutional right known by them or, in fact, alleged by Mr. Lariviere. "On a motion for summary judgment, 'the relevant question is whether a reasonable official could have believed his actions were lawful in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct.'" Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91 (1st Cir. 1994) (citation omitted).

Qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Lowinger v. Broderick, 50 F.3d 61, 65 (1st Cir. 1995).  Indeed, government agents are not always required to err on the side of caution. Davis v. Scheret, 468 U.S. 183, 196 (1984).  The qualified immunity standard is "specifically designed to avoid excessive disruption of

---

[33] See Exhibit "F" at page 205.
[34] Id. at pages 203 and 204.

government and permit the resolution of many insubstantial claims on summary judgment." Malley v. Briggs, 475 U.S. 340, 341 (1986), quoting Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982). The U.S. Supreme Court, has stated that "immunity ordinarily should be decided by the court long before trial." Hunter v. Bryant, 502 U.S. 224, 228, (1991), citing Mitchell v. Forsyth, 472 U.S. 511, 527-529 (1985). The Massachusetts Supreme Judicial Court has stated that "although 'reasonableness' is often a classic question for the finder of fact, in cases [involving qualified immunity] the reasonableness of the official's action should be treated as a question of law." Clancy v. McCabe, 441 Mass. 311, 323 (2004); citing Hunter v. Bryant, supra.

Based upon the allegations reported by Ms. Metin, the videotape of Mr. Lariviere's admitted conduct toward Ms. Metin on that morning, the defendants, Solomon and Alaimo, unquestionably believed, justifiably so, that they could question, detain and potentially arrest Mr. Lariviere. Defendant, Joseph Solomon, Methuen Chief of Police testified that potential sexual assault victims, such as Ms. Metin, have "inherit credibility."[35] The defendant, Joseph Solomon, testified that "the videotape had a dual purpose on both sides. It could corroborate what exactly Ms. Metin was saying, or it, it could vindicate Mr. Lariviere saying nothing did occur."[36] The defendant, Joseph Solomon, testified that while kissing and touching of the shoulder was not a sexual assault, touching of the buttocks by Mr. Lariviere and "the thrusting of his hips into her crotch area allowing his erect penis to touch her vagina" were both actions that could be considered a sexual assault.[37] Furthermore, defendant, Joseph Solomon, testified that he

---

[35] See Deposition Transcript from Deposition of Defendant, Joseph Solomon, at pages 22-24, attached to the Defendants' Motion for Summary Judgment as Exhibit "M".
[36] Id. at 35.
[37] Id. at pages 70-71.

believed that he and defendant, Joseph Alaimo, were authorized to detain Mr. Lariviere without arresting him while they were conducting their investigation on February 16, 2005 in the conference room.[38]  The defendant, Joseph Solomon, testified that he asked Mr. Lariviere during the interview "if there was any mitigating factors that maybe there was a dating relationship or was there any other information that could mediate the allegations that he inappropriately touched someone, and he said, no."[39]

Based upon Mr. Lariviere's conduct on the tape and his admission during his deposition when he admitted touching Ms. Metin's buttocks,[40] the defendants undeniably had probable cause to investigate Mr. Lariviere criminally.[41]  More importantly, they believed based upon the inherit reliability of Ms. Metin as a sexual assault victim, the explicit nature of her complaints confirmed by Mr. Larivere's conduct caught on videotape, and his failure to identify mitigating factors, that they had a right to detain him for questioning on the morning of February 16, 2005.  In accordance with the standard for allowing summary judgment on the issue of qualified immunity, defendants, Solomon and Alaimo, reasonably "believed [their] actions were lawful in light of clearly established law and the information the official possessed at the time of [their] allegedly unlawful conduct."  Clancy v. McCabe, 441 Mass. 311, 323 (2004); citing Hunter v. Bryant, supra.

---

[38] Id. at pages 57.
[39] Id. at 31-32.
[40] See Exhibit "F" at pages 145 – 148.
[41] A definition adopted by the SJC provides: "[a]n indecent assault and battery is essentially an act or series of acts which are fundamentally offensive to contemporary moral values . . . . [I]t is behavior which the common sense of society would regard as immodest, immoral and improper . . . . Thus, in order to prove indecent assault and battery, the Commonwealth must prove beyond a reasonable doubt that the defendant committed an intentional, unprivileged and indecent touching of the victim."  Commonwealth v. Perretti, 20 Mass. App. Ct. 36, 43-44 (1985).  It has been held that the intentional, unjustified touching of private areas such as "the breasts, abdomen, buttocks, thighs, and pubic area of a female" constitutes an indecent assault and battery.  Commonwealth v. De La Cruz, 15 Mass. App. Ct. 52, 59 (1982); see also Commonwealth v. Thayer, 20 Mass. App. Ct. 234, 238 (1985).

Therefore, if Mr. Lariviere has stated valid civil rights claims, under both 42 U.S.C. §1983 and M.G.L. c. 12, § 11I, the defendants are entitled to qualified immunity as a matter of law and, therefore, Counts III, IV and V should be dismissed with prejudice.

G.    **Count VI, Violation of 42 USC § 1983 Against Defendant, City of Methuen, Should be Dismissed Because Plaintiff Has Not Articulated A "Policy or Custom" That Caused A Constitutional Deprivation**

To prevail on a claim brought pursuant to 42 U.S.C. §1983, the plaintiff must prove: (1) the existence of a federal constitutional or statutory right; and (2) a deprivation of that right as a result of the defendants' actions under color of state law. Watterson v. Page, 987 F.2d 1, 7 (1st Cir. 1993). A municipality, such as Methuen, can only be held liable on a §1983 claim when some municipal "policy or custom" causes the alleged constitutional deprivation, Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 691-94 (1978) ("Local governing bodies . . . can be sued directly under §1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers . . . [or] . . . for constitutional deprivations visited pursuant to governmental custom' even though such a custom has not received formal approval through the body's official decisionmaking channels"); see also Silva v. Worden, 130 F.3d 26, 30-31 (1st Cir. 1997) ("a plaintiff seeking to impose liability on a municipality under §1983 must identify a municipal policy or a custom that caused the plaintiff's injury. . . . The disputed policy or custom must also be the cause and moving force behind the deprivation of constitutional rights.") (internal citations and punctuation omitted).

In <u>Monell</u>, the Supreme Court held that a municipality may not be held vicariously liable under § 1983 for the torts of an employee solely on the basis of its employer-employee relationship with the tortfeasor. <u>Id</u>. at 691. Instead, a plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal "policy" or a "custom" that caused the plaintiff's injury. See <u>Board of County Comm'rs of Bryan County v. Brown</u>, 520 U.S. 397 (1997); <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 479-81 (1986); <u>Monell</u>, 436 U.S. at 694. The disputed "policy" or "custom" must also be the cause and moving force behind the deprivation of constitutional rights. See <u>Bryan County Comm'rs</u>, 117 U.S. at 400. In the case of an alleged constructive discharge, the plaintiff must show that the discharge was the result either of an official policy, or of a custom "so well-settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." <u>Bordanaro v. McLeod</u>, 871 F.2d 1151, 1156 (1st Cir. 1989).

The Second Amended Verified Complaint only contains allegations of isolated actions taken against the plaintiff by Methuen and its employees. However, "[a]bsent evidence of an unconstitutional municipal policy, a single incident of misconduct cannot provide the basis for municipal liability under § 1983." <u>Fabiano v. Hopkins</u>, 352 F.3d 447, 452 (1st Cir. 2003) citing <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 823-24 (1985). Without any evidence of a municipal policy or custom, the plaintiff cannot maintain a cause of action against a municipality under § 1983. "Such a result would be the equivalent of imposing respondeat superior liability upon the municipality." <u>Fabiano</u>, 352 F.3d at 452.

In the instant matter, the plaintiff has not identified any discernible custom or policy underlying the municipal conduct of which complaint is made.[42]    At his deposition, when asked to identify a policy that coerced and intimidated him to resign his position, Mr. Lariviere provided the following testimony:

> Q:    Are you aware of a written policy that the City of Methuen had in place to force you to resign?
>
> A:    No.
>
> Q:    Are you aware of anything unwritten concerning a policy that the City had to coerce you to resign?
>
> A:    Yes.
>
> Q:    What was that?
>
> A:    Pollard and Solomon and Alaimo detailed repeatedly that she wanted me out, detailed that she wanted me either arrested or resigning and they were telling me repeatedly they were marching on her orders in addition to these allegations about Fulya's statements.[43]

When asked to clarify the custom and routine in place that forced him to resign, Mr. Lariviere testified:

> When Pollard decided she wanted to knock you out she made you life an absolute misery.  She did one after another in a Stalinist fashion.  She just made your life miserable.  She denied you rights.  She insulted you.  She demeaned you to your face.  She demeaned you behind your back so people would come to you.  She deprived you of any ability to effectively operate your office.[44]

However, Mr. Lariviere acknowledged at his deposition that Methuen Mayor Pollard's conduct did not play a role in his decision to resign.[45]

---

[42] See Exhibit "D" at ¶ 166.
[43] See Exhibit "J" at page 35-36.
[44] Id. at page 39.
[45] See Exhibit "J" at page 34.

The allegations in the instant case are similar to those in <u>Mahan v. Plymouth County House of Corrections</u>, 64 F.3d. 14, 16-17 (1st Cir. 1995). There, the plaintiff alleged that the municipality had a custom of inadequately investigating criminal complaints and then making arrests without probable cause. See <u>Id</u>. at 16. The plaintiff had produced no evidence, however, of either improper investigative methods or prior incidents similar to his own. See <u>Id</u>. at 17. The United States Court of Appeals for the First Circuit reiterated the rule that evidence of a single incident cannot, by itself, establish a policy or custom. See <u>Id</u>. at 16-17. Moreover, the court appeared to clarify its holding in <u>Bordanaro</u> -- to the extent it had left the matter in doubt -- that concerted action by a large contingent of municipal officials could support, but not by itself establish, the existence of a municipal policy or custom. See <u>Id</u>. at 16-17. Similarly, the plaintiff in the instant case alleges only a single incident of alleged inadequate investigation of a criminal complaint and a vague "conspiracy" by various officials to coerce him to resign.

Because plaintiff has failed to present this Court with evidence of even a single similar incident which could arguably support a finding of a municipal policy or custom, the count for a violation of 42 USC § 1983 against defendant, Methuen, should be dismissed with prejudice. Likewise, the claim against defendants, Solomon and Alaimo, in their official capacities, Count V, should be dismissed for the same reasons set forth herein. See <u>Howcroft v. City of Peabody</u>, 51 Mass.App.Ct. 573, 592-94 (2001) (a municipality is not a "person" for purposes of the MCRA; concluding further that a claim against an individual defendant in his official capacity as a municipal employee also is barred as the official capacity is an extension of the municipality).

**H.    Civil Conspiracy**

To establish a civil conspiracy**,** Mr. Lariviere must demonstrate that "a combination of persons [acted] pursuant to an agreement to injure the plaintiff." J.R. Nolan & L.J. Sartorio, Tort Law § 99, at 136 (2d ed. 1989). Gutierrez v. Mass. Bay Transp. Auth., 437 Mass. 396 (2004). "It is not sufficient to prove joint tortious acts of two or more persons . . . ." Id. at 134. In the instant case, aside from allegations in his Complaint, the plaintiff has not set forth any fact to show that he has a reasonable expectation of demonstrating that defendants, Solomon and Alaimo, worked in agreement to injure him. See Fed. R. Civ. P. 56(e) (the party opposing summary judgment "may not rest upon the mere allegations or denials of the . . . party's pleading."). For this reason, Count VIII for conspiracy should be dismissed with prejudice.

**I.    False Imprisonment**

Under Massachusetts law, false imprisonment is the intentional, unjustified confinement of a person, directly or indirectly, by force or threat, of which that person is conscious or by which he is harmed. Cremalti-Vickery v. Otis Elevator, Inc., 57 Mass.App.Ct. 1105 (2003). If the confinement or restraint is wrongful it amounts to a false imprisonment unless the defendant shows a justification for the confinement. Wax v. McGrath, 255 Mass. 340 (1926). Likewise, in a false arrest claim, where an arrest is effected without a warrant, it is the defendants' burden to prove a justification for the arrest. Gutierrez v. Mass. Bay Transp. Auth., 437 Mass. 396, 409 (2002).

Assuming, *arguendo*, the plaintiff's allegations of false imprisonment are accurate, the defendants, Solomon and Alaimo, had a right to confine Mr. Lariviere so long as the confinement was done "in a reasonable manner and for a reasonable time for investigative purposes." Foley v. Polaroid Corp., 400 Mass. 82, 89 (1987), citing Proulx

v. Pinkerton's Nat'l Detective Agency, Inc., 343 Mass. 390, 392-93 (1961) ("if the circumstances are such that an investigation is warranted, a person may be detained for a reasonable length of time and in a reasonable way").

Here, the period of time the plaintiff was in the conference room at Methuen City Hall was certainly reasonable. Although the plaintiff alleges that he requested to speak with his wife and was denied that opportunity, he declined the opportunity to speak with an attorney at any point during the time in the conference room.[46] The questioning of Mr. Lariviere was reasonable and appropriate because the allegations made by Ms. Metin[47] met the elements of the crime of indecent assault and battery.[48]

**J.    Count IX, Deceit, Should Be Dismissed**

Fed.R.Civ.P. 9(b), requires that allegations of fraud and deceit be pleaded with particularity. A claim for damages from deceit requires proof that (1) the defendant made a misrepresentation of fact; (2) it was made with the intention to induce another to act upon it; (3) it was made with the knowledge of its untruth; (4) it was intended that it be acted upon, and that it was in fact acted upon; and (5) damage directly resulted therefrom. See Graphic Arts Finishers, Inc. v. Boston Redev. Authy., 357 Mass. 40, 44 (1970). At a minimum, a plaintiff alleging fraud must particularize the identity of the person(s) making the representation, the contents of the misrepresentation, and where and when it took place. In addition, the plaintiff should specify the materiality of the misrepresentation, its reliance thereon, and resulting harm. See Friedman v. Jablonski,

---

[46] See Exhibit "F" at pages 157 and 158.
[47] See Exhibits "E", "H" and "I" and footnotes 15 through 25 infra.
[48] See footnote 50 infra.

371 Mass. 482, 488-489 (1976); Smith and Zobel, Rules Practice § 9.3 (1974).  Here, the plaintiff has not alleged what specific misrepresentations were made by the defendants.[49]

The defendants did not misrepresent that Fulya Metin wanted to press charges.[50]  In fact, she made her decision not to press charges about ten (10) days after February 16, 2005.[51]  Furthermore, the defendants made no misrepresentations about the media learning about his conduct on the morning of February 16, 2005.  Except for his conclusory speculation, Mr. Lariviere has not provided any evidence that the defendants, Solomon and Alaimo, informed the media about his conduct.

Even if the plaintiff has sufficiently plead a cause of action for deceit, an action for deceit will not lie for statements that are "merely a matter of opinion, estimate, or judgment."  Powell v. Rasmussen, 355 Mass. 117, 118 (1969).  As set forth above, defendants, Solomon and Alaimo, had ample reason to believe that Mr. Lariviere had committed a sexual assault and that Ms. Metin intended to press charges against him.[52]

### K.    Count II, Intentional Infliction of Emotional Distress, Should Be Dismissed

To prevail on a claim based on intentional infliction of emotional distress, the plaintiff must establish:

> (1) that the defendant[s] intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of [their] conduct, . . . (2) that the defendant[s'] conduct was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community, (3) [that] the actions of the defendant[s] were the cause of the plaintiff's distress, and (4) [that] the emotional distress suffered by the plaintiff

---

[49] See Exhibit "A" at ¶¶ 175-180.
[50] See Deposition of Fulya Metin at pages 22-24, attached to the Defendants' Motion for Summary Judgment as Exhibit "K".
[51] Id.
[52] See Defendants' Statement of Undisputed Fact at ¶¶ 9-11, 16-17, and 26-30.

was severe and of such a nature that no reasonable person could be expected to endure it.

Quinn v. Walsh, 49 Mass.App.Ct. 696, 732 (2000).

Liability cannot be predicated on:

mere insults, indignities, threats, annoyances, petty oppressions or other trivialities" nor even is it enough "that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.

Id. citing Tetrault v. Mahone, Hawkes & Goldings, 425 Mass. 456, 466 (1997).

The plaintiff's allegations and discovery produced do not reveal conduct that even approaches conduct that was "extreme and outrageous, beyond all possible bounds of decency." The defendants, Solomon and Alaimo, were conducting a lawful interview of a suspect accused of sexual assault against whom the allegations of specific conduct had just been corroborated on videotape. Their conduct was lawful and, even if the plaintiff's allegations are completely accepted, their conduct was completely reasonable under the circumstances. Therefore, Count II should be dismissed as a matter of law.

## IV.    CONCLUSION

In light of the foregoing, this Court should enter judgment in favor of the defendants, City of Methuen, Joseph Solomon, and Joseph Alaimo, on all counts of the Second Amended Verified Complaint against them.

The Defendants,                                    The Defendants,
**City of Methuen, Joseph Solomon  and**          **Joseph Solomon and Joseph Alaimo**
**Joseph Alaimo**                                  By their Attorneys,
By their Attorneys,

*/s/ Gareth W. Notis*                              */s/ Andrew J. Gambaccini*
Gareth W. Notis - BBO #637814                      Andrew J. Gambaccini, BBO #: 654690
Morrison Mahoney LLP                               Reardon, Joyce & Akerson, P.C.
250 Summer Street                                  397 Grove Street
Boston, MA 02210                                   Worcester, MA

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF System will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants this 20th day of June 2007.

*/s/ Gareth W. Notis*