UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO: 05-11579EFH

| | |
|---|---|
| MAURICE LARIVIERE,<br>　　　　Plaintiff,<br>v.<br><br>JOSEPH SOLOMON, Individually, and as Chief<br>of Police of the city of Methuen, JOSEPH<br>ALAIMO, Individually and as Deputy Chief of<br>Police of the City of Methuen, and THE CITY OF<br>METHUEN,<br>　　　　Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**STATEMENT OF RELEVANT FACTS IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1, the defendants, Joseph Solomon, Joseph Alaimo and City of Methuen (hereinafter collectively referenced as "defendants"), hereby submit the following statement of material facts of which there is no genuine issue for trial:

1.　　The plaintiff alleges that the defendants violated his rights by forcing him to resign from his position as City Solicitor for Methuen after a female subordinate under his direct supervision complained to the Methuen Police Department that the plaintiff had sexually harassed and/or assaulted her.[1]  Some of the plaintiff's assault of which his subordinate complained was captured on videotape.[2]

2.　　The plaintiff characterizes his relationship with the complaining subordinate as a "friendly" relationship, denies wrongdoing and asserts that the defendants' investigation of the subordinate's complaint and interaction with the plaintiff

---

[1] See Second Amended Verified Complaint, a copy of which is attached to the Defendants' Motion for Summary Judgment as Exhibit "D".
[2] See Report of Methuen Police Lieutenant, Michael J. Wnek, a copy of which is attached to the Defendants' Motion for Summary Judgment as Exhibit "E".

was improper.[3] The defendants deny wrongdoing and categorically deny liability to the plaintiff.

3. The plaintiff, Maurice Lariviere, began his employment as the City Solicitor for Methuen in May 1980.[4] He was reappointed to a two (2) year term in January 2005.[5] About a month after his last reappointment, Mr. Lariviere signed a written resignation letter on February 16, 2005 in which he resigned as City Solicitor.[6]

4. The plaintiff alleges that he had an acrimonious relationship with the Mayor of Methuen, Sharon Pollard.[7] In the Second Amended Verified Complaint, the plaintiff alleges that Mayor Pollard wanted to terminate his employment and hire a solicitor who would be primarily loyal to her.[8]

5. After the plaintiff's legal secretary retired on August 25, 2004, a female temporary secretary, Fulya Metin, was hired to work as the plaintiff's secretary.[9] According to the Second Amended Verified Complaint, over the following five (5) months, Mr. Lariviere and Ms. Metin developed a close personal relationship that included sharing meals, shopping excursions, conversations regarding personal issues, loans of money, hugging, kissing and inappropriate workplace physical contact.[10]

6. Prior to February 16, 2005, the plaintiff's secretary, Ms. Metin, complained to the Methuen Police Department that she had been subjected to sexual

---

[3] See Exhibit "D" ¶¶ 17 through 80.
[4] See Deposition Transcript from Deposition of Plaintiff, Maurice Lariviere, Vol. I at page 40, attached to the Defendants' Motion for Summary Judgment as Exhibit "F".
[5] See Exhibit "D" ¶ 5.
[6] See February 16, 2005 resignation letter, a copy of which is attached to the Defendants' Motion for Summary Judgment as Exhibit "G".
[7] See Exhibit "D" ¶¶ 8 through 16
[8] Id.
[9] Id. at ¶¶ 17 and 20.
[10] Id. at ¶¶ 22-46, 52-64.

harassment and/or sexual assault by the plaintiff on a continuing basis.[11]  Ms. Metin summarized the sexual harassment and/or sexual assault in a written statement that was submitted to the Methuen Police Department.[12]

7.  On or about February 16, 2005, the Methuen Police Department, with the secretary's knowledge and permission, videotaped the plaintiff's interaction with the secretary which recorded conduct that confirmed and corroborated the secretary's complaints about the plaintiff.[13]

8.  At his deposition, Mr. Lariviere acknowledged that there were instances of physical contact between him and Ms. Metin that were caught on the videotape on the morning of February 16, 2005 in the office of the City Solicitor at Methuen City Hall.[14]

9.  Mr. Lariviere testified that during the first encounter he approached Ms. Metin and reached across her desk and kissed her on the lips.[15]

10. Sometime later during the morning, after returning to his office, he came to Ms. Metin's desk and used her phone.  As he sat at her desk he rubbed her shoulders and stroked her hair.[16]  Mr. Lariviere testified that he kissed her on the lips and then returned to his office.[17]

11. Later during the morning, he returned to Ms. Metin's desk and squatted next to her.  Eventually, she stood up.[18]  Mr. Lariviere testified that in response he also

---

[11] See Exhibit "E".
[12] See three (3) page written statement of Fulya Metin, a copy of which is attached to the Defendants' Motion for Summary Judgment as Exhibit "H".
[13] See February 16, 2005 written statement of Fulya Metin, a copy of which is attached to the Defendants' Motion for Summary Judgment as Exhibit "I" and Exhibit "E".
[14] See Exhibit "F" at pages 137 through 148.  A copy of the videotape of the events on the morning of February 16, 2005 will be produced, under seal, at the direction of the Court.
[15] Id. at page 138.
[16] Id. at page 139.
[17] Id. at page 143
[18] Id. at pages 145 – 148.

stood up and hugged Ms. Metin.[19] He testified that he placed his hands on Ms. Metin's buttocks cheeks.[20] Mr. Lariviere testified that Ms. Metin then walked out of the office after this last hug and he then returned to his office.[21]

12.     Mr. Lariviere alleges that after Ms. Metin left the office on February 16, 2005, the defendants, Solomon and Alaimo, arrived at the City Solicitor's office, read him his Miranda rights and informed him that his secretary had made a complaint against him for sexual assault.[22]

13.     Mr. Lariviere testified that he was given his Miranda rights and never requested the right to consult an attorney during the time spent in the conference room.[23]

14.     Mr. Lariviere admitted during his deposition that defendants, Solomon and Alaimo, were acting within constitutional mandates when he was questioned, detained and allegedly threatened with arrest.[24]

15.     In his Second Amended Verified Complaint, Mr. Lariviere alleges that defendants, Solomon and Alaimo, asked, on behalf of Methuen Mayor Sharon Pollard, that he either resign and waive his right to a hearing, or face criminal prosecution.[25]

16.     At his deposition, Mr. Lariviere, a licensed attorney for over twenty-five (25) years, testified that he knew the Mayor had no authority to fire him; only the City Council could terminate him under the City Charter.[26]

---

[19] Id. at page 145.
[20] Id. at pages 145 – 148.
[21] Id. at page 148.
[22] See Exhibit "D" at ¶¶ 97 and 98.
[23] See Exhibit "F" at page 205.
[24] See Exhibit "F" at pages 203-204.
[25] See Exhibit "D" at ¶¶99 though 116.
[26] See Exhibit "F" at pages 173 – 175.

17.     At his deposition, Mr. Lariviere, testified that he understood the Mayor could not prosecute him criminally; only the Essex County District Attorney could prosecute him.[27]

18.     Further, Mr. Lariviere also testified that he believed at the time of his resignation that Fulya Metin was intent on pressing charges against him.[28] Contrary to the plaintiff's deposition testimony, Fulya Metin ultimately made the decision not to press criminal charges or cooperate with the District Attorney's office weeks after the date of Mr. Lariviere's resignation.[29] Her decision, therefore, was not concealed from him on the day of his resignation by defendants, Solomon and Alaimo.

19.     Faced with allegations of wrongdoing, Mr. Lariviere denied the allegations made by Ms. Metin and believed he had done nothing wrong.[30]

20.     Mr. Lariviere drafted the Sexual Harassment Policy for the City of Methuen and had performed "three or four" sexual harassment investigation during his tenure as City Solicitor.[31]

21.     Mr. Lariviere was aware that if he was investigated for sexual harassment, a hearing would be held before the Methuen City Council, not the Mayor.[32] He also was aware that he could be terminated from his employment for violation of the sexual harassment policy by the Methuen City Council, not the Mayor.[33]

---

[27] Id. at page 177.
[28] See Deposition Transcript from Deposition of Plaintiff, Maurice Lariviere, Vol. II at page 9, attached to the Defendants' Motion for Summary Judgment as Exhibit "J".
[29] See Deposition of Fulya Metin at pages 22-24, attached to the Defendants' Motion for Summary Judgment as Exhibit "K".
[30] See Exhibit "F" at pages 192 – 195.
[31] Id. at pages 55 and 57.
[32] Id. at page 58-65.
[33] Id. at pages 59-65.

22. Mr. Lariviere was a twenty-five (25) year "dedicated" employee awarded for his stellar performance against whom sexual harassment allegations never had been made.[34]

23. Nevertheless, Mr. Lariviere informed them that he would resign and, subsequently, Methuen's Human Resources Director, David Bain, entered the conference room and presented Mr. Lariviere with a proposed letter of resignation.[35] Mr. Lariviere testified that he signed the letter of resignation in the presence of David Bain and defendants, Solomon and Alaimo.[36]

24. Mr. Lariviere acknowledged that he signed the resignation letter and waived the right to an impartial panel or an Article 9 §9.10 hearing under the Methuen Charter.[37]

25. Mr. Lariviere claimed that he was not in a proper state of mind at the time he signed the resignation letter to understand what he was doing.[38] Despite believing that he had been forced to resign and believing that his resignation had been leaked to the media, Mr. Lariviere acknowledged at his deposition that he never timely petitioned the City Council to reinstate him to his position as City Solicitor or to revoke his resignation letter.[39]

26. Defendant, Joseph Solomon, Methuen Chief of Police, testified that potential sexual assault victims, such as Ms. Metin, have "inherit credibility."[40]

---

[34] Id. at page 193.
[35] Id. at page 196.
[36] Id. and see Exhibit "G".
[37] Id. at pages 195-197 and see City of Methuen Home Rule Charter, at Section 9, a copy of which is attached to the Defendants' Motion for Summary Judgment as Exhibit "L".
[38] Id.
[39] See Exhibit "J" at page 24.
[40] See Deposition Transcript from Deposition of Defendant, Joseph Solomon, at pages 22-24, attached to the Defendants' Motion for Summary Judgment as Exhibit "M".

27.     Defendant, Joseph Solomon, testified that he asked Mr. Lariviere during the interview "if there was any mitigating factors that maybe there was a dating relationship or was there any other information that could mediate the allegations that he inappropriately touched someone, and he said, no."[41]

28.     Defendant, Joseph Solomon, testified that "the videotape had a dual purpose on both sides. It could corroborate what exactly Ms. Metin was saying, or it, it could vindicate Mr. Lariviere saying nothing did occur."[42]

29.     Defendant, Joseph Solomon, testified that while kissing and touching of the shoulder was not a sexual assault, touching of the buttocks by Mr. Lariviere and "the thrusting of his hips into her crotch area allowing his erect penis to touch her vagina" was conduct that could be considered a sexual assault.[43]

30.     Furthermore, defendant, Joseph Solomon, testified that he believed he and defendant, Joseph Alaimo, were authorized to detain Mr. Lariviere without arresting him while they were conducting their investigation on February 16, 2005 in the conference room.[44]

| The Defendants,<br>**City of Methuen, Joseph Solomon and Joseph Alaimo**<br>By their Attorneys, | The Defendants,<br>**Joseph Solomon and Joseph Alaimo**<br>By their Attorneys, |
|---|---|
| */s/ Gareth W. Notis*<br>Gareth W. Notis - BBO #637814<br>Morrison Mahoney LLP<br>250 Summer Street<br>Boston, MA 02210 | */s/ Andrew J. Gambaccini*<br>Andrew J. Gambaccini, BBO #: 654690<br>Reardon, Joyce & Akerson, P.C.<br>397 Grove Street<br>Worcester, MA |

---

[41] Id. at page 31-32.
[42] Id. at page 35.
[43] Id. at pages 70-71.
[44] Id. at pages 57.

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF System will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants this 20th day of June 2007.


*/s/ Gareth W. Notis*