UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO: 05-11579EFH

_____
                                    )
MAURICE LARIVIERE,                  )
            Plaintiff,              )
                                    )
v.                                  )
                                    )
JOSEPH SOLOMON, Individually, and as Chief )
of Police of the city of Methuen, JOSEPH   )
ALAIMO, Individually and as Deputy Chief of )
Police of the City of Methuen, and THE CITY OF )
METHUEN,                            )
            Defendants              )
_____)

## DEFENDANTS', JOSEPH SOLOMON AND JOSEPH ALAIMO, MOTION TO IMPOUND AND FOR PROTECTIVE ORDER

The defendants, Joseph Solomon and Joseph Alaimo, move this Honorable Court for an Order pursuant to Local Rule 7.2 impounding videotapes[1] that the defendants seek to use as evidence at trial of this matter and enter a Protective Order concerning the viewing of the videotape at trial. In support of their motion, the defendants state as follows:

## FACTS

This is an action in which the plaintiff, Maurice Lariviere, ("Mr. Lariviere") alleges that the defendants, Joseph Solomon, ("Mr. Solomon") Joseph Alaimo ("Mr. Alaimo") and the City of Methuen violated his civil rights by forcing him to resign from his position as City Solictor for the City of Methuen. At the time of his resignation, Mr. Lariviere was being investigated by the Methuen Police Department for allegedly sexually assaulting his secretary, Fulya Metin ("Ms. Metin"), during the course of their employment for the City of Methuen in her office . The Methuen Police Department received Ms. Metin's permission to videotape her at work on

_____
[1] There is a full-length version and an highlights version of the video in question.

February 16, 2005.  Mr. Lariviere was not aware of the videotaping.  Ms. Metin described the content of the video in her complaint filed with the Massachusetts Commission Against Discrimination.  (A copy of the Complaint filed with the MCAD is attached as Exhibit "A").

In a separate action, the Eagle-Tribune Publishing Company filed a lawsuit requesting access to the videotapes.  The Essex County Superior Court denied this request on April 21, 2005 and held that this videotapes should not be publicly disseminated.  (A copy of the Court's Order is attached as Exhibit B).  The Court found that dissemination of the videotape would cause irreparable harm to Ms. Metin's privacy interests.  Additionally, the Court held that disclosure of the videotapes would have a "chilling effect" on citizen cooperation with future investigations of law enforcement.   On August 8, 2007, the Appeals Court for the Commonwealth of Massachusetts affirmed the Essex County Superior Court's decision.  (A copy of the Appeals' Court Memorandum and Order is attached as Exhibit C).   Specifically, the Court stated in footnote four (4) of its Memorandum and Order:

> Like the motion judge, we accept the premise that the videotape and its contents are of legitimate public interest.  However, by virtue of the private and intimate nature of the behavior apparently depicted on it, the disclosure of the videotape itself would cause unwarranted intrusion into Metin's privacy, and likely would deter other victims in the future from agreeing to cooperate with law enforcement officials attempting to use similar videotaping methods as part of an investigation.  The fact that Metin disclosed the substance of the videotape's content, albeit in narrative form, in her MCAD complaint does not waive her interest in keeping the videotape itself from public view.  There is a vast difference between a narrative account and a video presentation of sensitive or intimate personal matters.  See WBZ-TV4 v. District Attorney for the Suffolk Dist., 408 Mass. 595, 600-601 (1990).  That is especially true when the subject is a sexual assault.  Moreover, the public availability of the narrative account of the assault tends to diminish the incremental informational value, and hence the public interest, in disclosure of the videotape itself.

## REQUESTED RELIEF

Both Ms. Metin and the Essex County District Attorney's Office have agreed to allow the defendants to present the videotapes as evidence at trial pursuant to the Court's issuance of a Protective Order containing the conditions set forth above. (See Affidavit of Gareth W. Notis, Esquire, attached as Exhibit "D").

The defendants request that they be allowed to introduce the videotapes into evidence at the trial of this matter pursuant to the following conditions:

      1.    The videotapes will be entered into evidence and viewed in a closed courtroom with only the Judge, jurors, attorneys, parties and necessary court personnel in the courtroom;

      2.    The videotapes will be marked as an exhibit and impounded pursuant to Local Rule 7.2 so that it is not disclosed to the public; and

      3.    The videotapes will be returned to the Essex County District Attorney's Office at the conclusion of the trial.

The defendants attached hereto as Exhibit "E" a proposed Protective Order.

The Court should enter a Protective Order for the videotapes due to the sensitive nature of the content of the videotape, the public policy reason against chilling future investigations and the fact that there is no need to distribute the videotapes into the public domain. Furthermore, the defendants have obtained the cooperation of Ms. Metin and the Essex County District Attorney's Office in allowing the defendants to present the videotapes as evidence at the trial of this matter. Additionally, issuance of the Protective Order will result in no prejudice to any of the parties in this matter.

Lastly, the videotapes should be protected from public dissemination under several exemptions of the Massachusetts public records statute G. L. c. 66, § 10 (c). The public records statute favors disclosure by creating a "presumption that the record sought is public." G. L. c. 66, § 10 (c). The custodian of the record has the burden "to prove with specificity" that one of

the exemptions enumerated in G.L. c. 4, § 7, cl. 26 applies.  G.L. c. 66, § 10 (c).  Bougas v. Chief of Police of Lexington, 371 Mass. 59, 61-62 (1976).  Here, the videotapes qualify under the "privacy" G.L. c. 4, § 7 cl. 26(c), "investigatory" G.L. c. 4, § 7 cl. 26(f), and "statutory" exemptions G.L. c. 4, § 7 cl. 26(a) to the public records law.

## CONCLUSION

The defendants, Joseph Solomon and Joseph Alaimo, respectfully request that this Honorable Court allow the defendants' Motion to Enter the Protective Order.  The defendants request that the Court execute the Protective Order where indicated (See Exhibit E, ) and enter it on the Court's Docket.

The Defendants,
Joseph Solomon and Joseph Alaimo
By their Attorneys,


/s/ Gareth W. Notis
Gareth W. Notis,  BBO# 637814
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA  02210-1181
617-439-7500

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the EFC System will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants this 31st day of December, 2007.

/s/ Gareth W. Notis
Gareth W. Notis

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

C- City of Methuen
Attn: Director of Human Resources
41 Pleasant Street
Methuen, MA 01844


Maurice Lariviere
c/o City of Methuen
41 Pleasant Street
Methuen, MA 01844

Person Filing Charge:       Fulya Metin
This Person (Check One):    ( ) Claims to be aggrieved
                            ( ) Is filing on behalf of
Date of Alleged Violation:  02/16/05
Place of Alleged Violation:
EEOC Charge Number:         16CA501238
MCAD Docket Number:         05BEM00777

NOTICE OF CHARGE OF DISCRIMINATION WHERE AN FEP AGENCY WILL INITIALLY
PROCESS (See Attached Information Sheet For Additional Information)

You are hereby notified that a charge of employment discrimination under
      [ ] Title VII of the Civil Rights Act of 1964
      [ ] The Age Discrimination in Employment Act of 1967 (ADEA)
      [ ] The Americans Disabilities Act (ADA)
Has been received by
[ ]    The EEOC and sent for initial processing to   MCAD
                                        (FEP Agency)

[ ]    The Mass. Commission Against Discrimination
      (FEP) Agency and sent to the EEOC for dual filing purposes.

While the EEOC has jurisdiction (upon the expiration of any deferral requirements if this is a Title VII
or ADA Charge) to investigate this charge, EEOC may refrain from beginning an investigation and
await the issuance of the Agency's final findings and orders. These final findings and orders will be given
weight by EEOC in making its own determination as to whether or not reasonable cause exists to believe
that the allegations made in the charge are true.

You are therefore encouraged to cooperate fully with the Agency. All facts and evidence provided by
you to the Agency in the course of its proceedings will be considered by the Commission when it
reviews the Agency's final findings and orders. In many instances the Commission will take no further
action, thereby avoiding the necessity of an investigation by both the Agency and the Commission. This
likelihood is increased by your active cooperation with the Agency.

[X]    As a party to the charge, you may request that EEOC review the final decision and order of the above
       named Agency. For such a request to be honored, you must notify the Commission in writing within
       15 days of your receipt of the Agency's issuing a final finding and order. If the agency terminates
       its proceedings without issuing a final finding and order, you will be contacted further by the
       Commission. Regardless of whether the Agency or the Commission processes the charge, the
       Recordkeeping and Non-Retaliation provisions of Title VII and the ADEA as explained on the
       second page of this form apply.

For further correspondence on this matter, please use the charge number(s) shown.

[ ]    An Equal Pay Act Investigation (29 U.S.C 206(d) will be conducted by the Commission concurrently
       with the Agency's investigation of the charge.
[X]   Enclosure: Copy of the Charge

Basis of Discrimination
( ) Race          ( ) Color         ( ) Sex        ( ) Religion       ( ) National Origin

EEOC Charge Number 16CA501238, EEOC Transmittal Letter to Respondent

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| | ☐ FEPA | 0 51300777 |
| | ☐ EEOC | 16 CA 501238 |

and EEOC

State or local Agency, if any

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Ms. Fulya Metin | (978) 469-5893 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 200 Morgan Drive, | Haverhill, MA 01832 | 09/26/69 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| City of Methuen | City of Methuen and City Solicitor | (978) 794-3234 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 41 Pleasant Street | Methuen, MA 01844 | Essex |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| Maurice Lariviere | (978) 794-3234 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 41 Pleasant Street | Methuen, MA 01844 | Essex |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ AGE
☐ RETALIATION ☐ NATIONAL ORIGIN ☐ DISABILITY ☒ XXX OTHER (Specify) Sexual Harassment in the workplace.

| DATE DISCRIMINATION TOOK PLACE | |
|---|---|
| EARLIEST (ADEA/EPA) | LATEST (ALL) |
| Oct. 2004 | Feb. 2005 |

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Please see attached.

RECEIVED
MAR 18 2005

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| 3/8/05 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |
| Date          Charging Party (Signature) | 3/8/05       my commission expires 2-25-11 |

EEOC FORM 5 (Test 10/94)

| ( ) Age | ( ) Disability | ( ) Retaliation | ( ) Other |
|---|---|---|---|

Circumstances of alleged violation:

SEE ENCLOSED COPY OF THE CHARGE OF DISCRIMINATION (or EEOC FORM 5)

| Date | Type Name/Title of Authorized EEOC Official | Signature |
|---|---|---|
| 3/24/2005 | Robert L. Sanders, Director | |

The Commonwealth of Massachusetts
Commission Against Discrimination
One Ashburton Place , Boston, MA 02108
Phone:  (617) 994-6000 Fax:  (617) 994-6024

3/24/2005

C- City of Methuen
Attn: Director of Human Resources
41 Pleasant Street
Methuen, MA 01844

RE: Fulya  Metin   vs. C- City of Methuen, Maurice
Lariviere
MCAD Docket Number:  05BEM00777
EEOC/HUD Number: 16CA501238

Dear Respondent:

The Massachusetts Commission Against Discrimination (MCAD) has received the above complaint of
discrimination which alleges that you have committed an act of discrimination against the complainant.  A
copy of that complaint is enclosed.

State law requires the Commission to impartially review the allegations in that complaint.  The Commission
has assigned one of its staff, Aileen Quintero, to investigate the complaint.  This MCAD investigator will
keep the parties informed of the course of the investigation.

State law requires that you submit a formal written answer to the complaint, called a Position  Statement.
This Position Statement must be submitted within twenty-one (21) days of receipt of this notification.  The
Position Statement **must be signed under the pains and penalties of perjury**.  A copy must also be
forwarded to the Complainant at the address listed on the enclosed complaint.  Failure to file a Position
Statement or other response within the prescribed time may result in sanctions being imposed in accordance
with 804 CMR 1.16.

In order to reduce the time necessary to investigate and resolve complaints of discrimination, the MCAD
schedules an Investigative Conference with the parties shortly after the complaint is filed.  Information about
that Conference is included with this notice.

An Investigative Conference regarding the above complaint will be held at the Commission's Offices, One
Ashburton Place , Boston, MA, at 10:30 AM on 06/07/05.  You are required to attend this Conference.

One important purpose of this Conference will be to determine whether the parties are willing to consider a
rapid, informal and voluntary resolution of this dispute. The Commission encourages such resolutions as an
alternative to the often lengthy and expensive litigation process.

Please be advised that Position Statements are to be addressed to Robin Edwards-King, Administrative
Assistant.  If you have any questions concerning Position Statements please call (617) 994-6041.

If you have any questions pertaining to the Investigative Conference, please contact Aileen Quintero at (617)
994-6084.

Sincerely,

Aileen Quintero
Investigator

MCAD Docket Number 05BEM00777, Serve Respondent -- With Investigative Conference

**The Commonwealth of Massachusetts**
**Commission Against Discrimination**
One Ashburton Place , Boston, MA 02108
Phone:  (617) 994-6000 Fax:  (617) 994-6024

---

MCAD DOCKET NUMBER: 05BEM00777          EEOC/HUD CHARGE NUMBER: 16CA501238
FILING DATE: 03/18/05                    VIOLATION DATE: 02/16/05

---

Name of Aggrieved Person or Organization:
Fulya  Metin
200 Morgan Drive
Haverhill, MA 01832
Primary Phone: (978)469-5893 ext. _____

---

Named is the employer, labor organization, employment agency, or state/local government agency who discriminated
against me:
C- City of Methuen
Attn: Director of Human Resources
41 Pleasant Street
Methuen, MA 01844
Primary Phone: (978)794-3234 ext. _____

Maurice  Lariviere
c/o City of Methuen
41 Pleasant Street
Methuen, MA 01844
Primary Phone: (978)794-3234 ext. _____

No. of Employees:      20 +

Work Location: Methuen, Ma

---

Cause of Discrimination based on:
Sex, Female;  Sex, Sex discrimination / Sexual Harassment.

---

**The particulars are:**
I, Fulya  Metin, the Complainant believe that I  was discriminated against by C- City of Methuen, Maurice  Lariviere, on
the basis of Sex, Sex. This is in violation of M.G.L. 151B Section 4 Paragraph 16A and Title VII.

---

See Attached

MCAD Docket Number 05BEM00777, Complaint

# KAZAROSIAN LAW OFFICES

### 546 MAIN STREET
### HAVERHILL, MA 01830-3295

PAUL KAZAROSIAN [1]
MARSHA V. KAZAROSIAN [2]

LINDA M. LITTLE [2]
JANET E. DUTCHER [3]
DEMETRA PONTISAKOS [4]

TEL. (978) 372-7758
FAX: (978) 372-9299
WWW.KAZAROSIAN.COM

OFFICE MANAGER:
TRACI A. DURFEE

March 15, 2005

Massachusetts Commission Against Discrimination
One Ashburton Place
Boston, MA 02108

     Re:   **Fulya Metin v. Maurice Lariviere**

Dear Sir/Madam:

     Enclosed please find the Charge of Discrimination with attached Exhibit 1 Sexual
Harassment Particulars.

     Please do not hesitate to contact me if you have any questions. Thank you for your
attention to these matters.

     Very truly yours,

     KAZAROSIAN LAW OFFICES

     Marsha V. Kazarosian, Esquire

MVK:hmd
Enclosures

cc:    Fulya Metin

---

[1] Admitted in MA    [2] Admitted in MA & NH    [3] Admitted in MA & CA    [4] Admitted in MA, NH & NY

Exhibit 1 Sexual Harassment Particulars - MCAD Charge of Discrimination - Fulya Metin
3-15-05

On or about October 4, 2004, I was employed through a temp agency to be the secretary for City Solicitor of Methuen, MA, Maurice J. Lariviere. On the fourth day of my employment, Mr. Lariviere began making gross physical advances towards me. Specifically, on the fourth day while I was standing near the file cabinets, he grabbed me and kissed me. I was absolutely shocked and stunned. I immediately pushed him away and expressed my utter surprise and told him that he could not do that. He immediately apologized and he said that he could not help himself, and promised that he would never ever do it again. I thought that this would be the end of the situation and believed that he would never do this again.

Approximately one week later he started trying to touch me and kiss me again. He would touch me on my shoulders and would touch my hair, he would try to touch my breasts and my buttocks and I repeatedly told him over and over again that I did not want him to continue to do this. I also specifically told him that I had been a victim of abuse as a child, and that I could not handle what he was doing to me. Nevertheless, he continued to do it, almost on a more escalated level after I told him that I had been a victim of sexual abuse as a child. He made me feel extremely uncomfortable, and I felt sick to my stomach. I could not sleep at night, I would be panicked every time I had to show up for work in the morning. The more I told him to stop the more he continued to do it, stating that he was in love with me, that he loved me, that he cared about me, etc.

In December of 2004, I was offered the job full-time as secretary to Mr. Lariviere by and through the City of Methuen, and accepted the job. I was convinced that he would stop what he was doing. But even though I would try to deflect his attentions by pushing him away, telling him to stop, and trying to change the topic of conversation, he started to tell me that loved me. I would tell him that I cared about him as a person, but that I had not other feelings for him and that he had to stop. Again, he said that he could not help himself, and I felt terrible, but I also felt that I did not have a safe place to go. I was also afraid that I would lose my job, because I am a single mother and this is my sole source of income. I had moved out here from New York and was struggling to make ends meet.

Things got consistently worse. I would constantly tell him to stop what he was doing. He would escalate it to trying to put his hands down my pants, trying to put his hands on my breasts, and inside my blouse. He would try to drag me toward him. He would kneel down by my desk on the pretext of using the phone and then try to put his hands on my lap, hug me, kiss me, etc. I was getting more and more distraught and anxious about the situation.

I thought that I could defuse the matter, however, I did complain at that time to John Malloy, the Mayor's assistant. I told him what was happening and he suggested that I advised the Mayor. I was frightened and afraid to talk to the Mayor about this. I was not able to handle this or articulate it to a Mayor of a City, and I was worried about what would happen to Mr. Lariviere, knowing that he had been in this job for twenty-five years. I again thought that I could handle the matter and defuse it, particularly since I was going to be there full time. However, I was unable to do so.

By February 16, 2005, the situation was so wildly out of control and I was so physically and emotionally distraught by the matter, that I spoke to a police officer that I had met through his work with the city, Officer Michael J. Wnek. I told him what had been going on. I told him that I really needed a safer place to be, that I could not longer handle it, that I couldn't divert Mr. Lariviere and that I was getting physically and emotionally sick due to these circumstances.

Officer Wnek suggested that I do something about the matter and offered to install a video camera at my desk so that there would be evidence of what Mr. Lariviere had been doing. I agreed, and on the following Wednesday after I spoke to Officer Wnek, when I arrived at work, the video camera had been installed by my desk. The camera recorded Mr. Lariviere coming into the office and immediately coming to my desk, kissing me, trying to kiss me, reaching over the desk, kneeling down at my desk, touching my face and hair, trying to touch my breasts, etc., as I attempted to push him away As a result of the recording of that incident, Mr. Lariviere was approached and resigned from his job.

Since then, although I am still employed by the City of Methuen as Secretary to the Solicitor, the interim Solicitor appointed was Attorney Peter W. McQuillan, a man who I know to be one of Mr. Lariviere's very closest friends, since I was at a luncheon with the two of them on one occasion, and personally observed how close and what good friends they were. Mr. McQuillan's presence in the office and his close relationship with Mr. Lariviere is disturbing to me and I am, at this time, still unable to go to work. The media hounds me, even though I have not spoken at all to anyone, and I feel like horrible about the entire situation.

I have been emotionally and physically distraught, I cannot sleep at night, still to this day, I have flash backs of the sexual abuse that I endured as a child, I am unable to even envision myself going into the office at this time.

15

# COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.                                           SUPERIOR COURT
                                                     CIVIL ACTION
                                                     No. 05-523

### EAGLE-TRIBUNE PUBLISHING COMPANY

vs.

## JOSEPH E. SOLOMON, CHIEF OF POLICE OF THE CITY OF METHUEN, AS CUSTODIAN OF THE RECORDS OF THE METHUEN POLICE DEPARTMENT

\*\*\*\*

## ORDERS ON MOTIONS TO INTERVENE, AND ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

### A.    Intervention.

The District Attorney's Motion to Intervene is ALLOWED. Because the issues in the case include the applicability of the investigatory materials exemption from the definition of a "public record," G.L. c. 4, §7, cl. 26(f), and recognizing the District Attorney's statutory responsibility to investigate and prosecute crime in Essex County, it appears that the District Attorney claims an interest in the property or transaction which is the subject matter of the action; that his interest is (to a degree, at least) different from those of the other parties to the proceeding, and may not in all cases be adequately represented by them; and that he is so situated that disposition of this action may as a practical matter impair his ability to protect that interest. Intervention is therefore allowed as of right under Mass. R. Civ. P. 24(a)(2).

The motion of Fulya Metin to intervene was ALLOWED in open court, for reasons explained on the record.

B.    **Preliminary Injunction.**

As announced on the record in open court, and for the reasons explained there in greater detail, the plaintiff's Motion for Preliminary Injunction is DENIED.  In brief, and applying the standard of <u>Packaging Indus. Group, Inc. v. Cheney</u>, 380 Mass. 609, 616-617 (1980):

- The defendants have demonstrated a substantial likelihood of success on the merits of their claim that the videotape is exempt under G.L. c. 4, §7, cl. 26(c) and (f).  Even though the identities of the participants in, and the nature of, the incident allegedly depicted on the tape are already the subject of public discussion, dissemination of the tape "would have an incalculably greater effect on a person's privacy interest than dissemination of the written word."  <u>WBZ-TV4 v. District Attorney for the Suffolk Dist.</u>, 408 Mass. 595, 601 (1990).  The tape was, moreover, evidently created by the Police Department as part of its investigation of possible criminal behavior; the fact that the investigation is now inactive does little to vitiate the chilling effect that disclosure would have on citizen cooperation in future investigations.  See <u>Rafuse v. Stryker</u>, 61 Mass. App. Ct. 595, 600-01 (2004) and cases cited.

- The irreparable harm to individual privacy interests and to public law enforcement interests, should an injunction issue, would be substantial.  The irreparable harm to the plaintiff and to the public interest – both of whom are keenly interested in information concerning matters that are currently newsworthy – should the injunction be denied, is likewise substantial.

- Balancing, as I must, the potential for irreparable harm to both sides and to the public interest, in light of each side's likelihood of success on the merits (<u>Packaging</u>

-2-

Industries), it appears that the balance tilts decidedly against issuance of the requested injunction.

Thomas P. Billings, Associate Justice

Dated:  April 21, 2005

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

06-P-1535

EAGLE-TRIBUNE PUBLISHING COMPANY

<u>vs</u>.

CHIEF OF POLICE OF METHUEN & others.[1]

<u>MEMORANDUM AND ORDER PURSUANT TO RULE 1:28</u>

For essentially the reasons articulated in the motion judge's thorough and thoughtful memorandum and order on the plaintiff's motion for an in camera review of the videotape,[2] we affirm the judgment entered on the parties' cross motions for summary judgment.

In his order allowing the plaintiff's motion for an in camera review, the motion judge carefully considered the application of both the privacy and investigatory exemptions in G. L. c. 4, § 7, Twenty-sixth, (<u>c</u>), (<u>f</u>). We agree with his reasoning and conclusions. The judge acknowledged that the application of the exemptions to the videotape depended on whether its content essentially conformed to the narrative description furnished by intervener Fulya Metin in her complaint

---

[1] District attorney for the eastern district and Fulya Metin, interveners.

[2] We use the term "videotape" to refer generally to the video materials subject to the plaintiff's request. It appears from the record that the materials may be in both analog videotape and digital disc media forms.

filed with the Massachusetts Commission Against Discrimination
(MCAD), and that it accordingly was necessary for him to conduct
an in camera review of the videotape before determining with
finality the application of the exemptions to it.  The motion
judge's subsequent allowance of the motion for summary judgment
of the defendant and the interveners implicitly reflects the
judge's conclusion that the content of the videotape conformed to
the narrative description in Metin's MCAD complaint and to the
assumptions underlying the discussion of the two exemptions
contained in his prior order.

On appeal, the plaintiff does not assert that the motion
judge mischaracterized the content of the videotape.[3]  Instead,
the plaintiff suggests that the motion judge's memorandum of
decision on the parties' cross motions for summary judgment
lacked the requisite factual specificity to support it.  To the
contrary, the motion judge's decisions, read together, make it
plain that he accepted the description of the videotape set forth
in Metin's MCAD complaint.  That description, coupled with the
analytical discussion of the two applicable exemptions set forth

---

[3] In any event, the plaintiff neither has made a request
that we review the videotape itself, nor sought by any means to
include it in the record for our review.  We accordingly are
without basis to review the correctness of the motion judge's
assessment of its content, though there is nothing in the record
or the arguments of the parties to suggest that the motion
judge's assessment of the content of the videotape is incorrect
in any way.

2

in the judge's May 15, 2006, order on the plaintiff's motion for

an in camera review, more than adequately describe his rationale

for concluding that both the investigatory and privacy exemptions

apply to the videotape (a rationale and analysis with which, as

we have stated, we agree).[4]

Finally, the plaintiff has presented no basis upon which we

are persuaded to disturb the motion judge's failure to require

the release of redacted portions of the videotape, nor do we

discern any reason to believe that portions of the videotape

would alter the essential balance articulated by the motion judge

between the public interest and Metin's privacy concerns, or the

---

[4] Like the motion judge, we accept the premise that the
videotape and its contents are of legitimate public interest.
However, by virtue of the private and intimate nature of the
behavior apparently depicted on it, the disclosure of the
videotape itself would cause an unwarranted intrusion into
Metin's privacy, and likely would deter other victims in the
future from agreeing to cooperate with law enforcement officials
attempting to use similar videotaping methods as part of an
investigation. The fact that Metin disclosed the substance of
the videotape's content, albeit in narrative form, in her MCAD
complaint does not waive her interest in keeping the videotape
itself from public view. There is a vast difference between a
narrative account and a video presentation of sensitive or
intimate personal matters. See WBZ-TV4 v. District Attorney for
the Suffolk Dist., 408 Mass. 595, 600-601 (1990). That is
especially true when the subject is a sexual assault. Moreover,
the public availability of the narrative account of the assault
tends to diminish the incremental informational value, and hence
the public interest, in disclosure of the videotape itself.

3

applicability of the investigatory exemption.

Judgment affirmed.

By the Court (Green, Smith & Grainger, JJ.),

Ass/Clerk

Entered:  August 8, 2007

4

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO: 05-11579EFH

_____
                                                                    )
MAURICE LARIVIERE,                               )
                  Plaintiff,                                    )
                                                                    )
v.                                                                   )
                                                                    )
JOSEPH SOLOMON, Individually, and as Chief   )
of Police of the city of Methuen, JOSEPH     )
ALAIMO, Individually and as Deputy Chief of  )
Police of the City of Methuen, and THE CITY OF )
METHUEN,                                             )
                  Defendants                              )
_____)

**AFFIDAVIT OF GARETH W. NOTIS IN SUPPORT OF  DEFENDANTS', JOSEPH
SOLOMON AND JOSEPH ALAIMO'S MOTION FOR A PROTECTIVE ORDER**

I, Gareth W. Notis, Esquire, do hereby make the following affidavit under the pains and

perjury:

1.        I am an attorney duly licensed to practice law in the United States District Court

for the District of Massachusetts, and I represent the defendants, Joseph Solomon and Joseph

Alaimo, in this matter.

2.        I contacted Attorney David O'Sullivan, an Assistant District Attorney with the

Essex County District Attorney's Office, regarding the possibility of the defendants introducing

the videotapes of surveillance performed by the Methuen Police Department of the plaintiff,

Maurine Lariviere, at the trial of this matter.

3.        Attorney David O'Sullivan informed me that the Essex County Assistant District

Attorney's office agrees to allow the parties to introduce the videotapes into evidence at trial

subject to a Protective Order imposing the following conditions:

1100672v1

A.     The videotapes will be entered into evidence and viewed in a closed courtroom with only the Judge, jurors, attorneys, parties and necessary court personnel in the courtroom;

B.     The videotapes will be marked as an exhibit and impounded pursuant to Local Rule 7.2 so that it is not disclosed to the public; and

C.     The videotapes will be returned to the Essex County District Attorney at the conclusion of the trial.

4.     I contacted the attorney for Fulya Metin, Marsha Kazarosian, Esq., regarding the possibility of the parties introducing the videotapes of surveillance performed by the Methuen Police Department of the plaintiff, Maurine Lariviere, at the trial of this matter.

5.     Attorney Kazarosian informed me that her client, Ms. Metin, agrees to allow the parties to introduce the videotapes into evidence at trial subject to a Protective Order imposing the following conditions:

A.     The videotapes will be entered into evidence and viewed in a closed courtroom with only the Judge, jurors, attorneys, parties and necessary court personnel in the courtroom;

B.     The videotapes will be marked as an exhibit and impounded pursuant to Local Rule 7.2 so that it is not disclosed to the public; and

C.     The videotapes will be returned to the Essex County District Attorney at the conclusion of the trial.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 31st DAY OF DECEMBER, 2007.


                                        /s/ Gareth W. Notis
                                        Gareth W. Notis


1100672v1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO: 05-11579EFH

_____
                                                              )
MAURICE LARIVIERE,                          )
                    Plaintiff,                           )
                                                              )
v.                                                            )
                                                              )
JOSEPH SOLOMON, Individually, and as Chief      )
of Police of the city of Methuen, JOSEPH            )
ALAIMO, Individually and as Deputy Chief of      )
Police of the City of Methuen, and THE CITY OF  )
METHUEN,                                            )
                    Defendants                        )
_____)

## PROTECTIVE ORDER

Pursuant to United States District Court Local Rule 7.2, the parties to this action and their

counsel are subject to the following Protective Order:

1.      This protective order applies to the videotapes relating to an investigation by the

Methuen Police Department into allegations by Fulya Metin against the plaintiff, Maurice

Lariviere.

2.      The videotapes are to be used by the parties only in connection with the trial of

this matter.

3.      The videotape may be introduced as evidence at trial and viewed in a closed

courtroom in which only the Judge, jurors, parties, counsel and necessary court personnel are

present during the trial, including during closing arguments, or in the jury room during

deliberations outside the presence of any third-parties.

4.      The videotape will be marked as an exhibit, marked as "CONFIDENTIAL" and

impounded pursuant to Local Rule 7.2(b).

1100714v1

5.      After completion of the trial of this matter by either jury verdict, judgment by the Court or mistrial, counsel for the defendants, Joseph Solomon and Joseph Aliamo, will retrieve the videotape from the clerk and return the videotape to the Essex County District Attorney pursuant to Local Rule 7.2(c).

6.      No copies of the videotape will be made.

7.      At no time will the videotape be disclosed to the public.

8.      The parties may use the videotape at trial subject to paragraph 3 of this Order.

9.      The videotape produced under this Order shall not be deemed to waive any applicable privileges.

10.     This Order may be modified by this Court upon application by a party, with notice.

## ORDER

Upon consideration, a **PROTECTIVE ORDER** encompassing the terms of the foregoing is entered.

SO ORDERED.


Dated: _____                    _____
                                          Edward F. Harrington, U.S.D.J.