UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO: 05-11579EFH

| | |
|---|---|
| MAURICE LARIVIERE,<br>    Plaintiff,<br>v.<br><br>JOSEPH SOLOMON, Individually, and as Chief of Police of the city of Methuen, JOSEPH ALAIMO, Individually and as Deputy Chief of Police of the City of Methuen, and THE CITY OF METHUEN,<br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' MOTION IN LIMINE TO PRECLUDE INTRODUCTION OF EVIDENCE, REFERENCES TO EVIDENCE, TESTIMONY OR ARGUMENT REGARDING DEFENDANT, JOSEPH SOLOMON'S ADMINISTRATIVE LEAVE OR ANY DISCIPLINARY ACTION AGAINST HIM AS WELL AS ANY EVIDENCE, TESTIMONY OR ARGUMENT REGARDING RUMORED PENDING INVESTIGATORY PROCEEDINGS**

The defendants, Joseph Solomon and Joseph Alaimo, hereby move this Honorable Court in Limine for an Order precluding the plaintiff from introducing evidence, making reference to evidence, presenting or eliciting testimony or presenting argument regarding: (1) defendant, Joseph Solomon's administrative leave and any imposed or contemplated disciplinary action taken against him after February 16, 2005, the crucial date at issue in this litigation; or, (2) rumored pending investigatory proceedings, including grand jury proceedings, that might involve officials associated with the City of Methuen. In support of this motion, the defendants state the following:

**FACTS**

This is an action in which the plaintiff, Maurice Lariviere, alleges that the defendants, Joseph Solomon, Joseph Alaimo and the City of Methuen violated his civil

1099922v1

rights by forcing him to resign from his position as City Solicitor for the City of Methuen. The plaintiff's Second Amended Complaint contains the following Counts:

| | |
|---|---|
| Count I: | Constructive Discharge/Unlawful Termination against Methuen, Solomon and Alaimo; |
| Count II: | Intentional Infliction of Emotional Distress against Solomon and Alaimo; |
| Count III: | Violation of Massachusetts Civil Rights Act against Solomon and Alaimo; |
| Count IV: | Violation of 42 U.S.C. §1983 against Solomon and Alaimo; |
| Count V: | Violation of 42 U.S.C. §1983 against Solomon and Alaimo in their Official Capacity; |
| Count VI: | Violation of 42 U.S.C. §1983 against Methuen; |
| Count VII: | Intentional Interference With Contractual Relations against Methuen, Solomon and Alaimo; |
| Count VIII: | Conspiracy against Methuen, Solomon and Alaimo; |
| Count IX: | Deceit against Solomon and Alaimo; and |
| Count X: | False Imprisonment against Solomon and Alaimo. |

In early 2007, Defendant Joseph Solomon, Chief of Police in the City of Methuen, was suspended for three days following an allegation that a federal grant issued to the Methuen Police Department was mismanaged. Specifically, it was asserted that the grant funds at issue were to be used solely as compensation for patrol officers in the City of Methuen Police Department to conduct various activities associated with homeland security, but that some of those funds instead had been used to compensate officers of a supervisory rank, such as sergeants and lieutenants, for performing the tasks. Importantly, there was no assertion that the tasks for which the supervisors were compensated were not performed, rather the allegation only was that the supervisors should have been ineligible to work under the terms of the grant. After an appointing

authority hearing conducted before the designee of the City of Methuen's Mayor, Chief Solomon appealed the three day suspension to the Civil Service Commission for a de novo hearing-that appeal remains pending. The plaintiff's exhibit list is littered with material referencing this disciplinary action, despite the action's lack of connection to the matters to be presented to the jury for resolution in this litigation. Moreover, it is expected that the plaintiff may seek to present argument or testimony on this same issue.

On or about September 28, 2007, Defendant, Joseph Solomon was placed on paid administrative leave by the City of Methuen. The purpose of his administrative leave was in order to conduct an investigation "to determine the causes leading to the breakdown of the department infrastructure dividing rank and file; the causes for a significant fragmentation and misdirection in loyalties and purpose; causes for the precipitous breakdown in communication and relations, on all levels, with the local government and the alienation and isolation of the department from the general government resulting in lack of scrutiny and accountability." The administrative leave has no relation whatsoever to Chief Solomon's involvement in the facts of the underlying case or the criminal investigation into the plaintiff, Maurice Lariviere's conduct on February 16, 2005. Notwithstanding that lack of nexus, given the plaintiff's exhibit list and some of the individuals anticipated to be called to testify at trial, it appears that the plaintiff wishes to pursue matters related to this issue of administrative leave at trial.

At present, the issues related to the administrative leave appear to remain in the investigatory stage, as there has been no issuance of a notice of any contemplated adverse employment action. Further, as a civil service employee, even should such a notice be issued, Chief Solomon would have the right to a hearing conducted before his appointing

authority at the local level, at which time he would be given the opportunity to present evidence and rebut evidence presented in support of any contemplated action. Should adverse employment action be taken following such a hearing, Chief Solomon then would have the right to appeal the action to the Civil Service Commission for a de novo hearing, as he has done in connection with the aforementioned three day suspension.

Recent months also have seen the proliferation of reports by press outlets, many of which appear to be based on nothing more than rank speculation, that there have been grand jury proceedings that have taken place that might involve officials of the City of Methuen. As to this issue, the plaintiff's exhibit list, for example, lists a number of newspaper articles that, in whole or in part, focus upon these suspected proceedings. There is no material proffered by the plaintiff, whether documentary or testimonial in nature, tending to connect, in any form or fashion, any such proceedings with this litigation, or the events underlying this litigation. Nor is there any evidence in the material that a party to this litigation is a target of such proceedings.

## ARGUMENT

A.   **The Federal Rule of Evidence 404, Character Evidence Not Admissible to Prove Conduct; Exception; Other Crimes**

The Federal Rule of Evidence 404, Character Evidence Not Admissible to Prove Conduct; Exception; Other Crimes, reads in Relevant Part:

> (a) **Character Evidence Generally**. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
>
> …(3) *Character of Witness*. Evidence of the character of a witness, as provided in Rule 607, 608 and 609."

Federal Rules of Evidence 608

Evidence of Character and Conduct of Witness, reads in relevant part as follows:

> (a) **Opinion and Reputation Evidence of Character.** The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to a character for truthfulness or untruthfulness, and 2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.
>
> (b) **Specific Instances of Conduct.** Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
>
> The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of the accused's or the witness' privilege against self-incrimination when examined with respect to matters that relate only to character for truthfulness.

Any evidence or argument based upon the action taken against Chief Solomon, either as to his suspension in 2007 or as to his administrative leave, or any evidence regarding any suspected investigatory proceedings, all of which matters have arisen well after the incident at issue in this litigation, is character evidence. Chief Solomon's suspension and administrative leave were and are not based upon truthfulness or untruthfulness; rather, they were and are based upon allegations concerning the performance of duties in respects entirely immaterial to the issues at play in this litigation. For these reasons, under the Federal Rules of Evidence, any evidence of, or reference to, Chief Solomon's suspension, administrative leave or disciplinary actions, or

to suspected other investigatory proceedings potentially involving municipal officials, are inadmissible and should be barred from evidence by the Court.

### B. Evidence of Suspension, Administrative Leave, Disciplinary Action And Suspected Investigatory Proceedings Are Irrelevant

Federal Rule of Evidence 403, Exclusion Of Relevant Evidence On Grounds Of Prejudice, Confusion, Or Waste Of Time reads in relevant part:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

In the instant matter, any evidence of, or reference to, Chief Solomon's actions subsequent to the germane events in this matter on or about February 16, 2005, are highly irrelevant to the legal issues of this matter. Any evidence of suspension, administrative leave and disciplinary action taken against Chief Solomon after the events around February 16, 2005 are not probative in any regard of whether or not Mr. Lariviere was coerced into tendering his resignation. Furthermore, his suspension and administrative leave are over two and a half (2 ½) years after the February 16, 2005 resignation by Mr. Lariviere. Clearly, the suspension and administrative leave are too far remote from the incident to be relevant in any regard. They are not probative to show that it was more likely than not that Mr. Lariviere was coerced into resigning. Similarly, suspected investigatory proceedings potentially involving municipal officials also are irrelevant, remote in time, indeed arising after the events at issue here took place, and not probative of any issue to be resolved by the jury in this litigation.

Furthermore, as to the issue of the suspension, allowing the plaintiff to introduce evidence on, or to make reference to, this topic would require rebuttal, effectively turning

this federal forum into a civil service proceeding regarding the grounds for, and appropriateness of, the suspension. Such an attempt would waste an inordinate amount of time, would tend to confuse the real issues to be presented to the jury and also would have the undesirable result of holding the functional equivalent of a civil service hearing in this Court before the actual hearing before the Civil Service Commission takes place.

With regard to the administrative leave of Chief Solomon, evidence on, or reference to, this issue would be highly inappropriate during the trial of this litigation because, not only does the leave bear no connection to the matters presented for resolution here, but the status of the leave is such that there has been no notice of contemplated discipline issued by the appointing authority, if there even is to be one, and no hearing on any such charges, and hence no adjudication as to any administrative misconduct that might be alleged.

Finally, as to the suspected investigatory proceedings, for present purposes it suffices to say that any evidence on, or reference to, the issue would be immaterial and based on mere surmise, as contained in the media reports that the plaintiff seeks to introduce, or other similar evidence, that any such proceedings relate either to Defendant Solomon or Defendant Alaimo as targets of such proceedings.

For all of these reasons, this material should be barred from evidence of the trial of this matter, and counsel and the witnesses, should be precluded from making reference to these issues.

## CONCLUSION

For the reasons stated herein, the defendants, Joseph Solomon and Joseph Alaimo, hereby move this Honorable Court for an Order precluding the plaintiff from introducing evidence of, or making reference to, the defendant, Joseph Solomon's suspension, administrative leave and disciplinary action taken subsequent to February 16, 2005, or to any ongoing investigatory proceedings.

Respectfully Submitted,

| | |
|---|---|
| The Defendants, | The Defendants, |
| **Joseph Solomon and Joseph Alaimo** | **Joseph Solomon and Joseph Alaimo** |
| By their Attorneys, | By their Attorneys, |
| | |
| */s/ Gareth W. Notis* | */s/ Andrew J. Gambaccini* |
| Gareth W. Notis - BBO #637814 | Andrew J. Gambaccini, BBO #: 654690 |
| Morrison Mahoney LLP | Reardon, Joyce & Akerson, P.C. |
| 250 Summer Street | 397 Grove Street |
| Boston, MA 02210 | Worcester, MA |
| 617-737-8857 | 508-754-7285 |

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the EFC System will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants this 11th day of January, 2008.

/s/ *Gareth W. Notis*
Gareth W. Notis