UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO: 05-11579EFH

| | |
|---|---|
| MAURICE LARIVIERE,<br>   Plaintiff,<br>v.<br><br>JOSEPH SOLOMON, Individually, and as Chief<br>of Police of the city of Methuen, JOSEPH<br>ALAIMO, Individually and as Deputy Chief of<br>Police of the City of Methuen, and THE CITY OF<br>METHUEN,<br>   Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW AT CLOSE OF PLAINTIFF'S CASE**

The defendants, Joseph Solomon and Joseph Alaimo (hereinafter collectively referenced as "the defendants"), hereby move this Honorable Court for Judgment as a Matter of Law. In support of this request, the defendants state the following:

## **THE COUNTS IN THE PLAINTIFF'S SECOND AMENDED VERIFIED COMPLAINT**

The plaintiff's Second Amended Verified Complaint contains the following claims against the defendants:

  Count I:  Constructive Discharge/Unlawful Termination;

  Count II:  Intentional Infliction of Emotional Distress;

  Count III:  Violation of the Massachusetts Civil Rights Act;

  Count IV:  Violation of 42 U.S.C. §1983 against Solomon and Alaimo in their individual capacities;

  Count V:  Violation of 42 U.S.C. §1983 against Solomon and Alaimo in their official capacities;

  Count VII:  Intentional Interference With Advantageous Contractual Relations;

  Count VIII:  Conspiracy;

    Count IX:    Deceit; and,

    Count X:    False Imprisonment.[1]

## ARGUMENT

### A. Judgment as a Matter of Law Standard

Judgment as a matter of law should be granted when a party has been heard fully and the trial court determines "that a reasonable jury [c]ould not have a legally sufficient evidentiary basis [upon which] to find for the party on that issue . . . ." Fed.R.Civ.P. 50 (a) (1). The rule "allows the trial court to remove cases or issues from the jury's consideration 'when the facts are sufficiently clear that the law requires a particular result.'" *Weisgram v. Marley, Co.*, 528 U.S. 440, 448 (2000). In this task, the trial court may not intrude upon the province of the jury, either by making credibility determinations or by weighing evidence. *See Jordan-Milton Machinery, Inc. v. F/V Teresa Marie, II*, 978 F.2d 32, 34 (1st Cir. 1992).

### B. Judgment as a Matter of Law Should Enter for the Defendants as to Count VII, alleging Intentional Interference with Advantageous Contractual Relations, Given That This Court Already Has Dismissed the Claim and the Plaintiff Since Has Abandoned It.

On October 11, 2005, this Court entered an Order, following a motion to dismiss on behalf of all named defending parties, that, in relevant part, dismissed the plaintiff's claim of intentional interference with advantageous contractual relations as to each defending party. Although the plaintiff never moved for reconsideration of that determination, the same claim of intentional interference thereafter reappeared in successor versions of the operative pleading. Moreover, in response to the individual and municipal defendants' motion for summary judgment, which in part raised this earlier

---

[1] Counts I, VII and VIII also are advanced against the City of Methuen, while Count VI, alleging a claim pursuant to 42 U.S.C. § 1983, is brought only against the municipal defendant. Pursuant to this Court's December, 2007 Order of Severance, the claims against the City of Methuen have not yet been tried.

dismissal of the claim as a basis upon which to grant summary judgment, the plaintiff explicitly jettisoned the claim. *See* Plaintiff's Opposition to Defendants' Motion for Summary Judgment, Docket Entry No. 40, pp. 10-11 ("plaintiff agrees that this Court did dismiss plaintiff's claims for [i]ntentional [i]nterference with [c]ontractual [r]elations against all defendants . . . . Accordingly, the following claims remain . . . .") In light of this procedural history, which includes both this Court's dismissal of the claim and the plaintiff's subsequent decision not to contest that dismissal, judgment as a matter of law should enter for the defendants as to Count VII.

### C.     Count I of the Second Amended Verified Complaint, Alleging Constructive Discharge or Unlawful Termination, Is Barred Statutorily.

As a matter of law, Count I of the Second Amended Verified Complaint should be dismissed against these defendants. At the outset, it is absolutely critical to note the capacity in which this claim has been advanced against the defendants, namely, as a claim against them in their official capacities. *See* Second Amended Verified Complaint, ¶ 132 ("Defendants' actions, *in their official* capacity, were to force a resignation against Lariviere's will, and therefore the resignation should be treated as an unlawful termination."). This claim is barred statutorily.

Massachusetts General Laws c. 258, §§ 1 et seq., colloquially referred to as the Tort Claims Act, was enacted for the purpose of removing the defense of governmental immunity for the Commonwealth, municipalities and other governmental subdivisions in certain manner of tort actions. *Murphy v. Town of Chatham*, 41 Mass.App.Ct. 821, rev. denied 424 Mass. 1106 (1996). Massachusetts General Laws c. 258, § 10, however, provides that such a waiver shall not be effective in certain instances, including "any claim arising out of an intentional tort . . . ." G.L. c. 258, § 10 (c); *see also Swanset Dev.*

3

*Corp. v. City of Taunton*, 423 Mass. 390 (1996) (city could not be rendered liable for intentional interference with contractual or business relation).

Such an exception to the waiver of governmental immunity in the case of intentional torts extends beyond governmental entities, and also has been held to encompass intentional tort claims against governmental employees *acting in their official capacities*. *Howcroft v. City of Peabody*, 51 Mass.App.Ct. 573, 596 (2001) (referencing G.L. c. 258, § 10 (c) and concluding that municipality could not be held liable for tort of intentional infliction of emotional distress; concluding further that "like claims for damages against the other defendants in their official capacities were properly dismissed" (citations omitted)); *see also Saxonis v. City of Lynn*, 62 Mass.App.Ct. 916, 918 (2004) (rescript) (concluding that intentional interference claim against school principal in official capacity barred by G.L. c. 258, § 10 (c)); *accord Canney v. City of Chelsea*, 925 F.Supp. 58, 69 (D.Mass. 1996) (no such claim may lie "if the employee was acting within the scope of the employment and the employee was under the direction and control of the public employer. . . ."); *Fantini v. Salem State College*, 2007 WL 922883, 6 (D.Mass. 2007); *Stevens v. City of Brockton*, 676 F. Supp. 26 (D.Mass. 1987) (dismissing wrongful termination claim against police chief). As the Second Amended Verified Complaint makes clear that the defendants have been sued in their official capacities only, the defendants are entitled to an entry of judgment as a matter of law as to this claim.

**D.** **Judgment as a Matter of Law Should Enter for the Defendants as to Counts II and X of the Second Amended Verified Complaint, Respectively Advancing Claims of the Intentional Infliction of Emotional Distress and False Imprisonment, Because the Claims are Barred by the Workers' Compensation Statutory Scheme**

As a review of the Second Amended Verified Complaint reveals, and as a survey

4

of the plaintiff's presentation of his case-in-chief confirms, Counts II and X, advancing claims of the intentional infliction of emotional distress and false imprisonment, are animated entirely by the events alleged to have occurred in the second floor conference room. *See* Second Amended Verified Complaint, ¶ 137 (in claiming the intentional infliction of emotional distress, asserting that the "[d]efendants intended in the manner [in which] they obtained the resignation of Lariviere to inflict emotional distress . . . ."); ¶ 189 (in claiming false imprisonment, alleging that the defendants "unlawfully restrained the plaintiff by force and/or threats, and would not allow [the] plaintiff to . . . leave the conference room . . . ."). Flowing from those claims, the plaintiff has alleged both emotional or mental upset and physical injury. *See* Second Amended Verified Complaint, ¶ 141; 190.

As a matter of settled law, however, these claims are precluded by operation of the Workers' Compensation statutory scheme, G.L. c. 152, §§ 1 et seq.[2] Providing definitional content to the scope of the Workers' Compensation Act, G.L. c. 152, § 1 (7A) provides in relevant part that "Personal injuries shall include mental or emotional disabilities only where the predominant contributing cause of such disability is an event or series of events occurring within any employment. . . . No mental or emotional disability arising principally out of a bona fide, personnel action including a transfer, promotion, demotion, or termination *except such action which is the intentional infliction of emotional harm* shall be deemed to be a personal injury within the meaning of this chapter." (Emphasis added). Put simply, the event underlying Counts II and X, as well as large portions of Counts VII, VIII and IX alleging personal injury, was the transaction

---

[2] As are those portions of Counts VII, VIII and IX, alleging respectively intentional interference with advantageous contractual relations, conspiracy and deceit, that assert claims of personal injury, such as emotional or mental upset, or physical harm.

5

that took place in the second floor conference room that, the plaintiff alleges, then resulted in his resignation. Accordingly, the event lies fully within the plaintiff's employment with the City of Methuen.

Turning then to analysis of the consequence of this application of the Workers' Compensation Act, § 24 of the Act provides in relevant part that "[a]n employee shall be held to have waived his right of action at common law or under the law of any other jurisdiction in respect to an injury that is compensable under this chapter, to recover damages for personal injuries, if he shall not have given his employer, at the time of his contract of hire, written notice that he claimed such right, or, if the contract of hire was made before the employer became an insured person or self-insurer, if the employee shall not have given the said notice within thirty days of the time said employer became an insured person or self-insurer." Here, there was no such reservation of the plaintiff's common law remedies for personal injuries that otherwise fall within the ambit of the Workers' Compensation Act, meaning that the plaintiff's claim is barred statutorily. *See Foley v. Polaroid Corp.*, 381 Mass. 545 (1980) (intentional infliction of emotional distress claim arising out of employment relationship is personal injury claim precluded by the Act unless the plaintiff gave notice that he was not waiving his common law rights); *see also Stewart v. Roy Bros. Inc.*, 358 Mass. 446, 455 (1970) (employer's immunity from claims outside the scope of the Workers' Compensation Act extends to claims based upon conduct of fellow employees engaged in common enterprise and doing work of common employer); *see also Mendes v. Tin Kee Ng*, 400 Mass. 131, 133 (1987) citing *Saharceski v. Marcure*, 373 Mass. 304, 306 (1977).

E.  **Count V, Alleging a Violation of 42 U.S.C. § 1983 Against the Defendants in Their Official Capacities, May Not Be Entertained Presently Based Upon This Court's Order of Severance**

In December, 2007, this Court issued an Order of Severance, dividing those claims advanced against the individual defendants from those against the municipal defendant, which would be tried at a later date should it become necessary. Nevertheless, Count V of the Second Amended Verified Complaint, alleging a violation of 42 U.S.C. § 1983 and advanced against the defendants in their official capacities.

This claim is not proper for present review because, functionally, it is a claim against the City of Methuen. *See Hafer v. Melo*, 502 U.S. 21 (1991); *see also Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 71 (1989) ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office"); *Karcher v. May*, 484 U.S. 72, 78 (1987) ("the real party in interest in an official capacity suit is the entity represented and not the individual officeholder"). Accordingly, Count V should not be presented to the jury and, for the reasons discussed below as to the § 1983 claim advanced against the defendants in their individual capacities, judgment should enter in favor of the defendants as a matter of law.

F.  **Judgment as a Matter of Law Should Enter as to the Remaining Counts III, IV, VIII and IX, Alleging Respectively Violations of the Massachusetts Rights Act, Violations of 42 U.S.C. § 1983, Conspiracy and Deceit**

The remaining claims within the Second Amended Verified Complaint fail, as a matter of law, given the nature of the factual assertions made by the plaintiff during his case-in-chief and the application of those assertions to the appropriate legal frameworks.

1. **The Plaintiff's Civil Rights Claims Advanced Pursuant to the Massachusetts Civil Rights Act and 42 U.S.C. § 1983**

7

Conceptually, this Court may deal with the plaintiff's federal and state civil rights claims simultaneously, as they present issues that are very much intertwined analytically. As this Court has articulated at various points during the course of the trial, the plaintiff's asserted civil rights violations are in the nature of procedural due process claims.[3] Specifically, the plaintiff has claimed that he was forced, by the defendants, to resign his position as City Solicitor for the City of Methuen, and that such purported conduct by the defendants operated so as to deprive him of a "clearly established protected property interest, namely[,] his employment as [C]ity [S]olicitor." *See* Second Amend. Compl., p. 24, ¶ 145.

It is well-settled that, in order for the plaintiff to have a constitutionally-protected interest in continued employment, he must have a "property" right in it. "To have a property interest in a benefit, a person . . . must . . . have a legitimate claim of entitlement to it." *Costello v. School Committee of Chelsea*, 27 Mass.App.Ct. 822, 827 (1989). "Property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." *Cleveland Bd. Of Education v. Loudermill*, 470 U.S. 532, 538 (1985) (internal quotations omitted). Here, the plaintiff has invoked as the source for

---

[3] Curiously, the Second Amended Verified Complaint, in advancing its Massachusetts Civil Rights Act claim, makes a reference to a claimed denial of equal protection; *see* Second Amended Verified Complaint, ¶ 147; and, in advancing its § 1983 claim, also invokes the First Amendment to the United States Constitution. *See* Second Amended Verified Complaint, ¶ 151. Should this Court not determine that the plaintiff has abandoned these civil rights theories based upon his presentation at trial, these issues nevertheless may be resolved summarily given: (1) the fact that the plaintiff has failed to present a cognizable equal protection claim, centered upon any governmental classification on the basis of a protected characteristic, such as race, gender, age or disability; and, (2) the only reference to any impingement upon the plaintiff's right to free speech was to the denial of his requests to speak to his wife and his secretary while being interviewed in the conference room, a denial that does not implicate First Amendment interests. *See, e.g., Connick v. Myers*, 461 U.S. 138, 146-47 (1983) (claimed free speech violation must go beyond speech directly merely to personal interests or internal office grievances).

8

this due process property interest Article 9 of the Methuen Home Rule Charter. Second Amended Verified Complaint, ¶ 145.

As a threshold matter, it is necessary first to explore the depth of this claimed property interest, as the defendants did in a motion in limine focused upon the plaintiff's anticipated damages claim. *See* Defendants' Motion in Limine to Limit Evidence and Argument as to Claimed Damages, Docket Entry No. 61, filed January 11, 2008, pp. 1-5. As was expressed within that motion, relating to the claimed property interest in the position of City Solicitor for the City of Methuen, it has been alleged by the plaintiff in the Second Amended Verified Complaint that "[t]he City Solicitor's position is a two-year appointment made by the City Council pursuant to the Home Rule Charter of the City of Methuen. . . ."; Second Amend. Compl., p. 2, ¶ 5; and that the plaintiff had been reappointed by the City Council in January, 2005, meaning that his then existing appointment was to expire in January, 2007.

During the second day of his deposition, the plaintiff testified as to the nature of this claimed property interest, explaining that, excluding an instance of employment discrimination that might invoke various statutory protections, the plaintiff had no right to contest a decision by the Methuen City Council not to reappoint him. The relevant excerpted portions of the plaintiff's deposition were appended to the aforementioned motion in limine and, for ease of reference, are incorporated herein. The plaintiff further testified that, as to reappointment, he would not even have been entitled to an articulation as to the reason or reasons for which reappointment was not granted by the City Council. *See* Exhibit A to Defendants' Motion in Limine to Limit Evidence and Argument as to Claimed Damages, Docket Entry No. 61, filed January 11, 2008.

This claim therefore falls squarely within the holding of the United States Supreme Court in *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 578 n. 16 and accompanying text (1978). There, in exploring a claim as to whether an individual had a claim of entitlement to reemployment when the terms of employment were set to expire on a date certain, the *Roth* Court, finding no express provision for renewal, concluded that the employee had "absolutely no interest" in reemployment and no property interest in that reemployment. *Id.* Indeed, in what would be a strong parallel to this set of circumstances, in which the plaintiff might assert that his continued reappointments over the course of time created an "expectation" of reappointment that should be recognized, the *Roth* Court rejected the assertion that the practice of the employer in rehiring "most" employees upon expiration of their various terms created a legitimate claim of entitlement implicating due process protections. *Id.* Given this precedent, the plaintiff cannot be said to have any claim of entitlement to employment after the point in time at which his then-existing appointment was to expire, in January, 2007.

The nature of the plaintiff's claimed property interest thus explicated, inquiry now may turn to the procedural due process claim, at which point the analysis as to the federal and state civil rights claims must diverge briefly. Beginning with the § 1983 claim, this Court has been presented with a wealth of testimonial and documentary evidence regarding the Methuen Home Rule Charter. In brief, this Charter, based upon the plaintiff's own submissions; *see* Second Amended Verified Complaint, ¶ 145; created the procedural and substantive guarantees to which he claims he was deprived by the conduct of the defendants. Specifically, the Charter provides for the potential of an investigation,

pursuant to "2-11[,]" as it has been referred to during the trial, and provides for the potential of a hearing, pursuant to "9-10."

It is undisputed from the plaintiff that, at no point in time, did he formally request an investigation or a hearing, nor did he seek to rescind his tendered resignation, or even throw his hat into the ring when the interviews for a permanent appointment to the office of the City Solicitor were being conducted. Instead, the plaintiff claims that he attempted backroom maneuvering through then-Councilor and now-Mayor William Manzi to effectuate his return, claims that Mayor Manzi has refuted categorically.

In any event, this dispute over "informal" dealings is of no moment because the reality is that the plaintiff had available several adequate post-deprivation procedural remedies. "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (citations and emphasis omitted). First, the plaintiff was more than capable of taking some affirmative action to petition the City Council for an investigation or to conduct a hearing, rendering the process akin to the post-termination arbitration or other administrative processes that the First Circuit Court of Appeals has concluded to be proper to meet due process standards. *See O'Neil v. Baker*, 210 F.3d 41, 49 (1st Cir. 2000) (arbitration); *Cronin v. Town of Amesbury*, 81 F.3d 257, 260 (1996) (civil service appellate rights). Second, and equally as important, the plaintiff also had and has available a number of state tort remedies available. *See Davis v. Schifone*, 185 F.Supp.2d 95, 102 (D.Mass. 2002) ("Because the Massachusetts state tort of conversion[] and common-law remedies are

11

suitable postdeprivation remedies for the alleged conversion of Plaintiff's property, Defendant's alleged conduct-even if true-did not violate the Fourteenth Amendment."); *see also Aubuchon v. Commonwealth of Massachusetts*, 933 F.Supp. 90, 93 (1996) ("Although plaintiff alleges that she was deprived of constitutionally-protected property, she has not alleged that available remedies under Massachusetts law are inadequate to redress the deprivation."); *Lowe v. Scott*, 959 F.2d 323, 340-41 (1st Cir. 1992) ("If a state provides adequate post-deprivation remedies – either by statute or through the common law tort remedies available in its courts – no claim of a violation of procedural due process can be brought under Section 1983 against the officials whose random and unauthorized conduct caused the deprivation."). Here, the plaintiff actually has employed alternative state law tort remedies, including his sundry common law tort claims;[4] in this context, the plaintiff's § 1983 claim fails.

Turning then to the plaintiff's Massachusetts Civil Rights Act claim, the plaintiff must demonstrate that his "(1) . . . exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation or coercion.' " *Bally v. Northeastern Univ.*, 403 Mass. 713 (1989).

A "threat" "involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm." *Planned Parenthood League of Mass., Inc. v. Blake*, 417 Mass. 467 (1994) (citations omitted), cert. denied 513 U.S. 868 (1994). "'Intimidation' involves putting in fear for the purpose of compelling or deterring

---

[4] The viability of such claims, relating to adequate presentation of proof or the like, is not the operative inquiry for federal procedural due process purposes, rather, the inquiry is into the availability of such alternative remedies.

12

conduct." *Id.* (Citations omitted.) "Coercion," involves "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." *Id.* (quoting Webster's New International Dictionary at 519 (2d. ed. 1959) (citation omitted)).

As the evidence has indicated, the plaintiff knowingly waived his right to due process pursuant to the Methuen Home Rule Charter when he signed the resignation letter. Even to credit the notion of coercion, the plaintiff's claim that he signed the agreement under duress does not revive his purported property interest. In order to void the resignation letter because of duress, the plaintiff must show "that conduct by the other party caused him to enter into the contract 'under the influence of such fear as precludes him from exercising free will and judgment.'" *Coveney v. President & Trustees of the College of the Holy Cross*, 388 Mass. 16, 22 (1983), quoting from *Avallone v. Elizabeth Arden Sales Corp.*, 344 Mass. 556, 561 (1962). Duress constitutes "a wrongful or unlawful act or threat . . . which deprives the victim of his unfettered will," resulting in the threatened party being "compelled to make a disproportionate exchange of values." *International Underwater Contractors, Inc. v. New England Tel. & Tel. Co.*, 8 Mass.App.Ct. 340, 342 (1979), quoting from 13 Williston, Contracts § 1617, at 704 (3d ed. 1970). Not only must there be a wrongful or improper act or threat, but the act or threat must overcome the party's desire and undermine the agreement. *See Fleming v. Dane*, 298 Mass. 216, 218 (1937). Moreover, absent compelling circumstances, the availability of a reasonable alternative, such as a legal or administrative remedy, will defeat a claim of duress. Restatement (Second) of Contracts § 175, cmnt. b (1979). See

*Willett v. Herrick*, 258 Mass. 585, 603, cert. denied, 275 U.S. 545 (1927); *see also International Underwater Contractors*, 8 Mass.App.Ct. at 346.

Here, what is telling is the plaintiff's utter inaction to exhaust his available administrative remedies *after* February 16, 2005, and well after the plaintiff was outside the second floor conference room, outside the Methuen City Hall, outside the presence of the defendants or other law enforcement officials and within the contemplative confines of his residence and his attorneys' offices. That inaction is suggestive of the fact that there was no coercion or duress as to the resignation, and the availability of legal and administrative remedies defeats his claim of duress. *See Willett v. Herrick, supra; see also International Underwater Contractors, Inc. v. New England Tel. & Tel. Co., supra.* Accordingly, judgment as a matter of law should enter for the defendants as to the plaintiff's civil rights claims.

### 2. The Defendants Are Entitled to Qualified Immunity

Even if the plaintiff has alleged a viable civil rights claims, the defendants are entitled to qualified immunity. Qualified immunity "shields law enforcement officials who reasonably but mistakenly believe that they are acting in accordance with constitutional mandates." *Medeiros v. Dracut*, 21 F. Supp. 2d 82, 85 (D. Mass. 1998); *see Duarte v. Healy*, 405 Mass. 43, 47 (1989) (qualified immunity principles as developed under federal law also shield public officials from liability under Massachusetts Civil Rights Act). In evaluating a claim of qualified immunity the court must first decide whether, "taken in the light most favorable to the party asserting the injury . . . the facts alleged show the officer's conduct violated a constitutional right." *Gutierrez v. Mass. Bay Transp. Auth.*, 437 Mass. 396, 404 (2002). If so, the Court will

then determine whether the right was clearly established so that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.*

In the instant matter, the plaintiff admitted during his deposition that the defendants were acting within constitutional mandates when he was questioned, detained and allegedly threatened with arrest. The plaintiff testified that he was given his Miranda rights and never requested the right to consult an attorney during the time spent in the conference room.

Qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Lowinger v. Broderick*, 50 F.3d 61, 65 (1st Cir. 1995). Indeed, government agents are not always required to err on the side of caution. *Davis v. Scheret*, 468 U.S. 183, 196 (1984). The qualified immunity standard is "specifically designed to avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Malley v. Briggs*, 475 U.S. 340, 341 (1986), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). The United States Supreme Court has stated that "immunity ordinarily should be decided by the court long before trial." *Hunter v. Bryant*, 502 U.S. 224, 228, (1991), citing *Mitchell v. Forsyth*, 472 U.S. 511, 527-529 (1985). The Massachusetts Supreme Judicial Court has stated that "although 'reasonableness' is often a classic question for the finder of fact, in cases [involving qualified immunity] the reasonableness of the official's action should be treated as a question of law." *Clancy v. McCabe*, 441 Mass. 311, 323 (2004); citing *Hunter v. Bryant*, supra.

Based upon the allegations reported by Ms. Metin and the videotape of the plaintiff's admitted conduct toward Ms. Metin on that morning, the defendants unquestionably believed, justifiably so, that they could question, detain and potentially

15

arrest the plaintiff. In accordance with the standard for allowing invocations of qualified immunity, the defendants reasonably "believed [their] actions were lawful in light of clearly established law and the information the official possessed at the time of [their] allegedly unlawful conduct." *Clancy v. McCabe*, 441 Mass. 311, 323 (2004); citing *Hunter v. Bryant*, supra. Consequently, judgment should enter for the defendants as to Counts III and IV of the Second Amended Verified Complaint.

### 3.   Conspiracy

To establish a civil conspiracy, the plaintiff must demonstrate that "a combination of persons [acted] pursuant to an agreement to injure the plaintiff." J.R. Nolan & L.J. Sartorio, Tort Law § 99, at 136 (2d ed. 1989); *see also Gutierrez v. Mass. Bay Transp. Auth.*, 437 Mass. 396 (2004). "It is not sufficient to prove joint tortious acts of two or more persons . . . ." Nolan & Sartorio, at 134. Here, as the evidence proffered by the plaintiff at trial has revealed, there simply has been no evidence presented, beyond the plaintiff's own conjecture and surmise, that a vast conspiracy involving the defendants, as well as others, existed. For this utter failure of proof, judgment as a matter of law should enter in favor of the defendants as to Count VIII of the Second Amended Verified Complaint.

### 4.   Deceit

Rule 9 (b) of the Federal Rules of Civil Procedure requires that allegations of fraud and deceit be pleaded with particularity. A claim for damages from deceit requires proof that: (1) the defendant made a misrepresentation of fact; (2) it was made with the intention to induce another to act upon it; (3) it was made with the knowledge of its untruth; (4) it was intended that it be acted upon, and that it was in fact acted upon; and

(5) damage directly resulted therefrom. *See Graphic Arts Finishers, Inc. v. Boston Redev. Auth.*, 357 Mass. 40, 44 (1970). At a minimum, a plaintiff alleging fraud must particularize the identity of the person(s) making the representation, the contents of the misrepresentation, and where and when it took place. In addition, the plaintiff should specify the materiality of the misrepresentation, its reliance thereon, and resulting harm. *See Friedman v. Jablonski*, 371 Mass. 482, 488-489 (1976); Smith and Zobel, Rules Practice § 9.3 (1974). Here, the plaintiff has not alleged particularly what specific misrepresentations were made by the defendants.

In fact, there has been no testimony before the Court that any misrepresentations were made. During his testimony, the plaintiff seemed to indicate that this claim of deceit was based upon his belief that Ms. Metin never wanted to press criminal charges against him. That assertion, however, was belied by the testimony of all witnesses to the point, including Solomon and Ms. Metin herself. To a person, the testimony was that Ms. Metin did not make a complaint with the "goal" or purpose of advancing criminal charges, instead desiring only that the plaintiff's unwanted physical and other advances cease, and wanting whatever it took to accomplish that goal, but the evidence showed that criminal prosecution was a possibility that did not resolve until Ms. Metin's decision not to press charges some *weeks* after the February 16, 2005 event. As this assertion appears to be the only basis for the plaintiff's claim of deceit, the failure of proof is such that this Court should exercise its authority to decide the question as a matter of law. Further, to the extent that this assertion is based upon any expression of opinion as to what Ms. Metin would ultimately decide by way of criminal prosecution, any such expression of

opinion is insufficient to underlie a claim of deceit. *See Powell v. Rasmussen*, 355 Mass. 117, 118 (1969).

## CONCLUSION

In light of the foregoing, this Court should enter judgment as a matter of law in favor of the defendants, Joseph Solomon, and Joseph Alaimo, on all counts of the Second Amended Verified Complaint advanced against them.

| | |
|---|---|
| The Defendants,<br>**Joseph Solomon and Joseph Alaimo**<br>By their Attorneys, | The Defendants,<br>**Joseph Solomon and Joseph Alaimo**<br>By their Attorneys, |
| */s/ Gareth W. Notis*<br>Gareth W. Notis - BBO #637814<br>Morrison Mahoney LLP<br>250 Summer Street<br>Boston, MA 02210<br>(617)-737-8857 | */s/ Andrew J. Gambaccini*<br>Andrew J. Gambaccini, BBO #: 654690<br>Reardon, Joyce & Akerson, P.C.<br>397 Grove Street<br>Worcester, MA<br>(508) 754-7285 |

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants this 22nd day of January 2008.

*/s/ Andrew J. Gambaccini*